# EXHIBIT A

**Exhibit A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK, IAS Part 23
-------------------------------------------------------------- x
BRAD H., *et al.*,

                    Plaintiffs,

-against-

THE CITY OF NEW YORK, *et al.*,

                    Defendants.
-------------------------------------------------------------- x

Index No. 117882/99
Braun, J.

**STIPULATION OF SETTLEMENT**

**Exhibit A**

**TABLE OF CONTENTS**

Page

I.     DEFINITIONS.................................................................................................3
II.    SETTLEMENT RELIEF ...............................................................................14
       A.    General Provisions ..............................................................................14
       B.    Contact with the Community ..............................................................15
       C.    Determination of Class Membership And Creation of a Discharge Plan ..............16
       D.    Designation of a Class Member as Seriously Mentally Ill .................19
       E.    Release of Class Members from DOC Custody ..................................21
       F.    Determination of Class Members' Release Dates ...............................22
       G.    SPAN Offices.......................................................................................23
       H.    Elements of Discharge Planning ........................................................24
             1.   Continuing Mental Health Treatment and Services....................25
             2.   Access to Medication and Prescriptions......................................28
             3.   Access to Medicaid and  Medication Grant Program Benefits........32
             4.   Public Assistance and SNAP Benefits ........................................37
             5.   Housing ........................................................................................41
             6.   Transportation .............................................................................46
       I.    Class Members Who Appear at a SPAN Office more than Thirty Days After
             Their Release Date ..............................................................................47
III.   SETTLEMENT IMPLEMENTATION ........................................................47
IV.    MONITORING..............................................................................................48
       A.    Selection and Appointment of Compliance Monitors .......................48
       B.    Costs of Monitoring ............................................................................50
       C.    Scope and Method of Monitoring .......................................................51
             1.   Access to Records .......................................................................52
             2.   Access to Computer Systems.......................................................53
             3.   Access to Manuals .......................................................................54
             4.   Access to Class Members ............................................................55
             5.   Access to Training .......................................................................56
             6.   Access to Areas where Discharge Planning is Performed............56
             7.   Access to Staff .............................................................................57
       D.    Development of Performance Goals ...................................................58
       E.    Reporting By Compliance Monitors...................................................61
       F.    Monitoring by Class Counsel..............................................................62
       G.    Confidentiality ....................................................................................64
V.     ENFORCEMENT .........................................................................................65
       A.    Compliance ..........................................................................................65
       B.    Cure......................................................................................................66
       C.    Cost of Enforcement ...........................................................................67
       D.    Protection of Individual Class  Members Pending Settlement Approval ..............67
VI.    CONTRACTORS ..........................................................................................68
VII.   EDUCATION OF THE COMMUNITY ......................................................68
VIII.  ORDER OF NOTICE, HEARING AND APPROVAL ...............................70
IX.    OBJECTIONS TO AND COMMENTS ON THE SETTLEMENT................72
X.     ATTORNEYS' FEES AND EXPENSES.......................................................73
XI.    TERMINATION OF THIS AGREEMENT ..................................................74

i

**Exhibit A**

### TABLE OF CONTENTS
(continued)

Page

XII.    MODIFICATION OF THIS AGREEMENT.................................................................75
XIII.   TERMINATION OF PROSPECTIVE RELIEF.........................................................75
XIV.    GENERAL MATTERS AND RESERVATIONS.......................................................76

# Exhibit A

1
2
3 SUPREME COURT OF THE STATE OF NEW YORK
4 COUNTY OF NEW YORK, IAS Part 47

------------------------------------------------------- x

BRAD H., *et al.*,                                     :
                                                       :
                           Plaintiffs,                 :
                                                       :
        -against-                                      :   Index No. 117882/99
                                                       :   Edwards, J.
THE CITY OF NEW YORK, *et al.*,                        :
                                                       :
                           Defendants.                 :

------------------------------------------------------- x

5
6                    **STIPULATION OF SETTLEMENT**

7        This Stipulation of Settlement (the "Settlement Agreement" or "Agreement")

8    is entered into by counsel for Brad H., Robert K., Michael R., Susan T. and Kevin

9    W., themselves and on behalf of the Class certified in this action on August 8, 2000

10   (as further described below) (collectively, the "Class" or "Class Members," and each

11   individually a "Class Member") and the City of New York, its agencies and

12   instrumentalities (the "City"); Hon. Michael R. Bloomberg, Mayor of the City of

13   New York; the New York City Health and Hospitals Corporation ("HHC"); Dr.

14   Benjamin Chu, M.D., President of HHC; the New York City Department of Health

15   and Mental Hygiene ("DMHH"); Dr. Thomas R. Frieden, M.D., Commissioner of the

16   DMHH; the New York City Department of Correction ("DOC"); Martin F. Horn,

17   Commissioner of DOC; the New York City Human Resources Administration

18   ("HRA"); Verna Eggleston, Commissioner of HRA; Prison Health Services, Inc.

19   ("PHS"); and Gerald F. Boyle, Chief Executive and President of PHS.

**Exhibit A**

20        **WHEREAS,** Plaintiffs commenced this action alleging that Defendants had

21    violated, and continued to violate, New York Mental Hygiene Law § 29.15, 14

22    N.Y.C.R.R. 587 *et seq*. and Article I, Sections 5 and 6 of the Constitution of the State

23    of New York, by failing to provide adequate discharge planning to inmates receiving

24    mental health treatment in correctional facilities maintained and operated by the

25    DOC;

26        **WHEREAS,** by preliminary injunction entered July 9, 2000, the Court

27    directed Defendants to provide discharge planning to the plaintiff class in accordance

28    with New York Mental Hygiene Law § 29.15 and 14 N.Y.C.R.R. 587 *et seq*.;

29        **WHEREAS,** by Order dated August 8, 2000, the Court certified the Class,

30    consisting of:

31        all inmates (a) who are currently incarcerated or who
32        will be incarcerated in a correctional facility operated
33        by the New York City Department of Correction ("City
34        Jail"), (b) whose period of confinement in City Jails
35        lasts 24 hours or longer, and (c) who, during their
36        confinement in City Jails, have received, are receiving,
37        or will receive treatment for a mental illness; provided,
38        however, that inmates who are seen by mental health
39        staff on no more than two occasions during their
40        confinement in any City Jails and are assessed on the
41        latter of those occasions as having no need for further
42        treatment in any City Jail or upon their release from any
43        City Jail shall be excluded from the class;

44        **WHEREAS,** counsel for the Class have reviewed thousands of pages of

45    documents produced by Defendants, have deposed senior employees and officials of

46    Defendants, and have retained and consulted with experts concerning the merits of

47    the claims and defenses asserted in this action and the terms of this Agreement; and

**Exhibit A**

48      **WHEREAS,** the Parties now desire to resolve the remaining issues raised in

49   this action without further proceedings and without admitting any fault or liability;

50      **NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED,**

51   by and between the undersigned, as follows:

52   **I.     DEFINITIONS**

53      1.      As used in this Agreement and the exhibits annexed hereto (which are

54   an integral part of this Agreement and are incorporated in their entirety by reference),

55   the following terms shall have the following meanings, unless otherwise provided in

56   this Agreement or its exhibits:

57      a.      "2010e Application" shall mean the application used by
58         HRA to determine the eligibility of individuals with
59         serious Mental Illness for Supportive Housing in New
60         York City.  The term "2010e Application" also shall
61         mean any forms, however named or titled, that HRA or
62         other agencies use at any time in the future to determine
63         the eligibility of individuals with serious Mental Illness
64         for Supportive Housing in New York City.

65      b.      "ACT" shall mean assertive community treatment team.

66      b.1.    "Activation of Class Members' Medicaid benefits"
67         shall mean the timely execution of steps to effectuate
68         the activation of Medicaid for a new Medicaid
69         application or unsuspension of existing Medicaid
70         benefits that had been previously suspended, pursuant
71         to Social Services Law § 336[1-a], during the  Class
72         Member's incarceration.

73      c.      "Action" shall mean the lawsuit captioned *Brad H., et
74         al. v. City of New York, et al.*, Index No. 117882/99,
75         filed in the Supreme Court of the State of New York,
76         County of New York.

77      d.      "Agreement" or "Settlement Agreement" shall mean
78         this Stipulation of Settlement and all attached exhibits,
79         including any subsequent amendments to the
80         Agreement and/or the exhibits thereto.

- 3 -

**Exhibit A**

| | | |
|---|---|---|
| 81 | e. | "Benefits Unit" shall mean the group of employees of |
| 82 | | one or more Defendants who process applications for |
| 83 | | Public Assistance, Medicaid and/or SNAP on behalf of |
| 84 | | Class Members, as more fully described in Correctional |
| 85 | | Health Services' Policies and Procedures Manual. |
| 86 | f. | "Case Management Services" shall mean services |
| 87 | | provided to Class Members by or through ICM, SCM, |
| 88 | | ACT and/or LINK workers and their agents. |
| 89 | g. | "CHS" shall mean the Correctional Health Services |
| 90 | | division of HHC. |
| 91 | h. | [Removed] |
| 92 | i. | "City" shall mean the City of New York. |
| 93 | j. | "City Jail" or "Jail" shall mean any correctional facility |
| 94 | | operated by one or more Defendants. |
| 95 | k. | "Class" or "Class Members" shall mean the Class |
| 96 | | certified by the Court by Order dated August 8, 2000. |
| 97 | l. | "Class Counsel" shall mean Debevoise & Plimpton, |
| 98 | | New York Lawyers for the Public Interest, Inc., and |
| 99 | | Douglas Lasdon, Raymond H. Brescia and Heather |
| 100 | | Barr, currently of the Urban Justice Center, who are the |
| 101 | | law firms and attorneys appointed to represent the Class |
| 102 | | pursuant to a stipulation and order. |
| 103 | m. | "Class Notice" shall mean the legal notice providing |
| 104 | | Class Members with information about the terms of the |
| 105 | | proposed Settlement described herein and their rights in |
| 106 | | connection therewith. |
| 107 | n. | "Comment Box" shall mean a sealed box with a slit in |
| 108 | | the top through which Class Members may insert |
| 109 | | Comment Sheets. |
| 110 | o. | "Comment Sheet" shall mean the form on which any |
| 111 | | Class Member may record comments on and/or |
| 112 | | objections to the proposed Settlement set forth in this |
| 113 | | Settlement Agreement. |
| 114 | p. | [Removed] |

- 4 -

**Exhibit A**

| | | |
|---|---|---|
| 115<br>116 | q. | "Complaint" shall mean the complaint filed by Plaintiffs in this Action on August 24, 1999. |
| 117<br>118<br>119<br>120<br>121<br>122 | r. | "Compliance Monitors" shall mean the individuals appointed by the Court pursuant to § IV of this Agreement to monitor the provision of Discharge Planning in City Jails and Defendants' compliance with the terms and provisions of this Agreement, as set forth more fully herein. |
| 123<br>124<br>125 | s. | "Comprehensive Treatment Plan" or "CTP" shall mean each individualized treatment plan created by Defendants pursuant to § II of this Agreement. |
| 126<br>127 | t. | "Court" shall mean the Supreme Court of the State of New York, County of New York. |
| 128 | u. | [Removed] |
| 129<br>130<br>131<br>132<br>133<br>134<br>135 | v. | "Defendants" shall mean The City of New York and its agencies and instrumentalities; Hon. Bill de Blasio, Mayor of the City of New York; HHC; Stanley Brezenoff, Interim President and CEO of HHC; DHMH; Dr. Mary Travis Bassett, M.D., Commissioner of DHMH; DOC; Joseph Ponte, Commissioner of DOC; HRA; and Steven Banks, Commissioner of HRA. |
| 136<br>137<br>138<br>139<br>140<br>141 | w. | "Defendant Agencies" shall mean all City agencies and entities involved in providing Discharge Planning services as contemplated by this Settlement Agreement, including but not limited to HRA, DHS, HHC, DOC, DHMH and agencies contracting with the City to provide SPAN, LINK, or transportation services. |
| 142<br>143<br>144 | x. | "Defendants' Counsel" shall mean the New York City Law Department, the Office of the Corporation Counsel. |
| 145<br>146 | y. | "DHMH" shall mean the City Department of Health and Mental Hygiene. |
| 147<br>148 | z. | "DHS" shall mean the City Department of Homeless Services. |

1003086436v1

**Exhibit A**

| | | |
|---|---|---|
| 149<br>150<br>151<br>152 | aa. | "DHS Assessment" shall mean the assessment performed by DHS to determine the shelter in which to place any individual seeking shelter in the City's Shelter System. |
| 153<br>154 | aa.1. | "DHS Database" shall mean the database utilized by the Correctional Referral Unit of DHS. |
| 155<br>156<br>157<br>158<br>159<br>160<br>161<br>162 | bb. | "Discharge Plan" shall mean the plan describing the manner in which an individual will be able to receive a clinically appropriate level of continuing mental health treatment – as well as assistance in applying for other necessary treatment, services and benefits – immediately upon his or her release from or transfer out of a City Jail, as further described in § II of this Agreement. |
| 163<br>164 | cc. | "Discharge Planning" shall mean the process of formulating and implementing the Discharge Plan. |
| 165<br>166<br>167<br>168<br>169<br>170<br>171<br>172 | dd. | "Discharge Planning Facilities" shall mean all locations where CHS, its medical vendor, SPAN Office Staff and agents or contractors of CHS or any SPAN Office (i) assess individuals for their need or eligibility for services or benefits related to their Discharge Plans or (ii) perform any task to create and/or implement Discharge Plans and/or any task otherwise related to Discharge Planning. |
| 173<br>174<br>175<br>176 | ee. | "Discharge Planning MIS" shall mean a unified, computerized Discharge Planning information system, containing at least the data fields set out in Exhibit A hereto. |
| 177<br>178<br>179<br>180<br>181<br>182 | ff. | "Discharge Planning Staff" shall mean all personnel who have been trained to evaluate each individual's need for Discharge Planning and/or to develop or implement an appropriate and adequate Discharge Plan for each such individual as further described in § II of this Agreement. |
| 183<br>184<br>185<br>186 | gg. | "Discharge Summary" shall mean a document that summarizes a Class Member's mental health treatment needs and Discharge Plan, including but not limited to diagnoses, current medications, and where the Class |

- 6 -

**Exhibit A**

| | | |
|---|---|---|
| 187<br>188 | | Member should go in the community to receive<br>treatment and services. |
| 189 | hh. | "DOC" shall mean the City Department of Correction. |
| 190<br>191<br>192<br>193<br>194 | ii. | "EBT card" or "Electronic Benefit Transfer card" shall<br>mean a card issued by a vendor of the State of New<br>York to a recipient of Public Assistance administered<br>by HRA to provide that individual with electronic<br>access to such benefits. |
| 195<br>196 | jj. | "Emergency Benefits" shall mean Immediate Needs<br>Grants and Expedited SNAP. |
| 197<br>198<br>199 | kk. | "BEV" shall mean the Eligibility Verification Review<br>conducted by HRA to verify an individual's eligibility<br>for Public Assistance. |
| 200<br>201<br>202<br>203<br>204 | ll. | "Expedited SNAP" shall mean SNAP benefits issued as<br>a result of the expedited processing of a SNAP<br>application, pursuant to federal and state statutes and<br>regulations and on the same terms available to other<br>SNAP applicants in New York City. |
| 205<br>206<br>207 | mm. | "Execution Date" shall mean the last date on which this<br>Agreement is executed by all of Class Counsel and<br>Defendants' Counsel. |
| 208<br>209<br>210<br>211 | nn. | "Fairness Hearing" shall mean the hearing at or after<br>which the Court will make a final decision whether to<br>approve this Agreement and the proposed Settlement<br>set forth therein as fair, reasonable and adequate. |
| 212<br>213<br>214<br>215<br>216<br>217 | oo. | "Final Order and Judgment" shall mean the order in<br>which the Court approves the proposed Settlement and<br>the terms of this Agreement, and the judgment entered<br>pursuant to that Order, which the parties shall seek<br>substantially in the form attached as Exhibit B hereto<br>and as further described in § VIII of this Agreement. |
| 218 | pp. | [Removed] |
| 219<br>220<br>221 | qq. | "General Population" shall mean all units in City Jails<br>in which inmates are housed other than Segregated<br>Mental Health Units. |

1003086436v1

| | | |
|---|---|---|
| 222 | rr. | "Hearing Order" shall mean the order in which the |
| 223 | | Court authorizes and directs the provision of notice to |
| 224 | | the Class concerning of the terms of this Agreement, |
| 225 | | the proposed Settlement and Class Members' rights in |
| 226 | | connection therewith, and in which the Court schedules |
| 227 | | a date for the Fairness Hearing, substantially in the |
| 228 | | form attached as Exhibit C hereto and as further |
| 229 | | described in § VIII of this Agreement. |
| | | |
| 230 | ss. | "HHC" shall mean the City Health and Hospitals |
| 231 | | Corporation. |
| | | |
| 232 | tt. | "HRA" shall mean the City Human Resources |
| 233 | | Administration. |
| | | |
| 234 | uu. | [Removed] |
| | | |
| 235 | vv. | "I/A Shelters" shall mean DHS intake facilities and/or |
| 236 | | assessment shelters. |
| | | |
| 237 | ww. | "ICM" or "Intensive Case Management" services shall |
| 238 | | mean an intensive level of case management services |
| 239 | | for individuals with Serious Mental Illnesses.  ICM |
| 240 | | workers, or people who provide ICM services directly |
| 241 | | to clients, meet with clients at least once per week to |
| 242 | | assist clients in gaining access to needed services, |
| 243 | | including but not limited to public benefits; medication; |
| 244 | | psychiatric, substance abuse and medical treatment; |
| 245 | | housing; and rehabilitative, educational and vocational |
| 246 | | services.  Eligibility for ICM services is governed by |
| 247 | | regulations of the New York State Office of Mental |
| 248 | | Health. |
| | | |
| 249 | xx. | "IIS" shall mean the DOC Inmate Information System. |
| | | |
| 250 | yy. | "Immediate Needs Grant" shall mean a pre- |
| 251 | | investigation emergency grant issued by HRA, pursuant |
| 252 | | to New York Social Services Law § 133 and the |
| 253 | | Regulations and Administrative Directives of the New |
| 254 | | York State Office of Temporary and Disability |
| 255 | | Assistance, prior to HRA's completion of a full |
| 256 | | eligibility determination for cash assistance. |
| | | |
| 257 | zz. | "Implementation Date" shall mean the date, defined in |
| 258 | | § III of this Agreement, by which Defendants shall have |

**Exhibit A**

259   in place all systems to provide Discharge Planning as
260   contemplated by this Agreement.

261   aaa.   "Jail Treatment Locations" shall mean all Segregated
262   Mental Health Units and other areas in which inmates,
263   including but not limited to inmates housed in General
264   Population, receive mental health treatment.

265   bbb.   "Job Center" shall mean any location at which HRA
266   accepts or processes applications or assesses eligibility
267   for Public Assistance and SNAP.

268   ccc.   "LINK" shall mean Case Management Services
269   contracted for by Defendants in which LINK workers
270   meet with clients during their transition from a City Jail
271   to the community to assist them in gaining access to
272   needed services, including but not limited to Public
273   Assistance; Medicaid; SNAP; medication; psychiatric,
274   substance abuse and medical treatment; housing; and
275   rehabilitative, educational and vocational services.  For
276   purposes of this Agreement the acronym "LINK" refers
277   to such Case Management Services notwithstanding the
278   program title used in connection with such services in
279   the future.

280   ddd.   "Medication Grant Program" or "MGP" shall mean a
281   program administered by the State of New York that
282   will provide all eligible individuals with a means to pay
283   for medication and medication monitoring until
284   determination of the individual's eligibility for
285   Medicaid benefits, as further described in 1999 N.Y.
286   Laws 408 § 15.

287   eee.   [Removed]

288   fff.   "Mental Health Program Shelter" shall mean a Program
289   Shelter that is designed to house homeless individuals
290   who have Mental Illness.

291   ggg.   "Mental Health Records" shall mean any and all
292   documents, in any form (including documents
293   maintained only on electronic or other non-paper
294   media), that contain information regarding a Class
295   Member's mental health treatment history including,
296   but not limited to, documents containing information
297   regarding visits to physicians and Discharge Planning

-9-

**Exhibit A**

| | | |
|---|---|---|
| 298 | | Staff for mental health treatment, and documents |
| 299 | | reflecting the prescription of medication to a Class |
| 300 | | Member for the treatment of Mental Illness. |
| | | |
| 301 | hhh. | "Mental Illness" shall mean an affliction with a mental |
| 302 | | disease or mental condition, which is manifested by a |
| 303 | | disorder or disturbance in behavior, feeling, thinking, or |
| 304 | | judgment to such an extent that the person afflicted |
| 305 | | requires care, treatment and rehabilitation. |
| | | |
| 306 | iii. | "Mental Observation Units" or "MOUs" shall mean |
| 307 | | segregated housing units within the City Jails in which |
| 308 | | inmates are housed and receive mental health |
| 309 | | evaluation, observation and/or treatment. |
| | | |
| 310 | jjj. | "RHU" or "Restrictive Housing Units" shall mean the |
| 311 | | specialized units in City Jails operated by DOC for the |
| 312 | | confinement of inmates who are being punished for |
| 313 | | disciplinary infractions and who need mental health |
| 314 | | supervision, observation or treatment or are being |
| 315 | | assessed for such supervision, observation or treatment. |
| | | |
| 316 | kkk. | "Notice Materials" shall mean the Class Notice, the |
| 317 | | Summary Notice (in English and Spanish) and the |
| 318 | | Comment Sheet. |
| | | |
| 319 | lll. | "Parties" shall mean Plaintiffs (in their individual and |
| 320 | | representative capacities) and Defendants. |
| | | |
| 321 | mmm. | [Removed] |
| | | |
| 322 | nnn. | "Plaintiffs" shall mean Brad H., Robert K., Michael R., |
| 323 | | Susan T. and Kevin W., by and through Plaintiffs' |
| 324 | | Counsel. |
| | | |
| 325 | ooo. | "Plaintiffs' Counsel" shall mean Debevoise & |
| 326 | | Plimpton, New York Lawyers for the Public Interest, |
| 327 | | Inc., and Douglas Lasdon, Raymond H. Brescia and |
| 328 | | Heather Barr, currently of the Urban Justice Center. |
| | | |
| 329 | ppp. | "Program Shelter" shall mean a shelter in the DHS |
| 330 | | Shelter System in which individuals with the need for |
| 331 | | similar services are housed.  Such shelters provide |
| 332 | | mental health programs, substance abuse treatment |
| 333 | | programs, and employment programs. |

- 10 -

**Exhibit A**

| | | |
|---|---|---|
| 334<br>335<br>336<br>337<br>338 | qqq. | "Public Assistance" shall mean Temporary Assistance to Needy Families and/or Safety Net Assistance benefits that are issued by HRA to an eligible individual or family.  Public Assistance shall not include either SNAP or Medicaid benefits. |
| 339<br>340<br>341 | rrr. | "Release Date" shall mean the date on which an individual was, or is expected to be, released from incarceration in a City Jail. |
| 342<br>343<br>344<br>345<br>346 | sss. | "Safety Net Assistance" or "SNA" shall mean benefits as defined in New York Social Services Law § 157 and the regulations and administrative directives of the New York State Office of Temporary and Disability Assistance. |
| 347<br>348<br>349<br>350<br>351<br>352<br>353 | sss.1. | "SNAP" shall mean Supplemental Nutrition Assistance Program benefits available from HRA pursuant to the Food  and Nutrition Act, 7 U.S.C. §§ 2011 *et seq*., U.S. Department of Agriculture regulations at 7 C.F.R. Part 271 *et seq*., and New York State Office of Temporary and Disability Assistance regulations, including 18 NYCRR Part 387. |
| 354 | ttt. | [Removed] |
| 355<br>356<br>357<br>358<br>359<br>360<br>361<br>362<br>363<br>364 | uuu. | "SCM" or "Supportive Case Management" services shall mean Case Management Services for persons with Serious Mental Illnesses.  SCM workers, or people who provide SCM services directly to clients, meet with clients at least every two weeks to assist clients in gaining access to needed services, including but not limited to Public Assistance; Medicaid; SNAP; medication; psychiatric, substance abuse and medical treatment; housing; and rehabilitative, educational and vocational services. |
| 365<br>366<br>367<br>368<br>369<br>370 | vvv. | "Segregated Mental Health Units" shall mean all housing units in the City Jails that use need for mental health care or assessment as a criterion for admission to the Unit, including MOUs, RHUs, and any housing area designed specifically for individuals with or suspected of having Serious Mental Illness. |

1003086436v1

**Exhibit A**

| | | |
|---|---|---|
| 371<br>372<br>373 | www. | "Seriously Mentally Ill" or "SMI" shall mean meeting the criteria for Serious Mental Illness as outlined in Addendum A. |
| 374<br>375 | xxx. | "Settlement" shall mean the settlement of this Action as described in this Settlement Agreement. |
| 376<br>377<br>378<br>379 | yyy. | "Shelter System" shall mean the system of homeless shelters, including but not limited to I/A Shelters and Program Shelters, operated directly by DHS or by entities that contract with DHS. |
| 380<br>381<br>382 | zzz. | "Significant Others" shall mean relatives, close friends, associates and/or individuals concerned with the welfare of an individual incarcerated in a City Jail. |
| 383<br>384<br>385<br>386 | aaaa. | "Social Security Benefits" shall mean all benefits that may be obtained through application to the Social Security Administration of the U.S. Department of Agriculture. |
| 387<br>388<br>389<br>390 | bbbb. | "SSD" or "Social Security Disability" shall mean disability insurance benefits paid to eligible individuals pursuant to the Social Security Act, 42 U.S.C. §§ 401, *et seq.* |
| 391<br>392<br>393 | cccc. | "SSI" or "Supplemental Security Income" benefits shall mean benefits paid to eligible individuals pursuant to the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* |
| 394<br>395<br>396<br>397<br>398<br>399 | dddd. | "SPAN Offices" shall mean the offices described in § II.G of this Agreement.  For purposes of this Agreement the acronym "SPAN" refers to the services and offices described in § II.G of this Agreement notwithstanding the program title used in connection with such services or offices in the future. |
| 400<br>401 | eeee. | "SPAN Office Staff" shall mean all personnel employed at SPAN Offices. |
| 402<br>403<br>404<br>405<br>406<br>407 | ffff. | "SPOA Agency" or "Single Point of Access Agency" shall mean the agency or agencies, but not DHS Shelters or I/A Shelters, that are or will be designated to administer the centralized intake and referral to Supportive Housing, ICM, SCM and/or ACT services in New York City. |

**Exhibit A**

| 408 | gggg. | "Summary Notice" shall mean a summary of the |
| 409 | | information contained in the Class Notice, to be made |
| 410 | | available in English and Spanish. |

| 411 | hhhh. | "Supportive Housing" shall mean the full range of |
| 412 | | different models of housing and residential treatment in |
| 413 | | New York City that are designed to meet the needs of |
| 414 | | individuals with Mental Illness who require both |
| 415 | | housing and supportive services (including, but not |
| 416 | | limited to, community residences, residential care |
| 417 | | centers for adults, MICA community residences, |
| 418 | | supported housing, and apartment treatment programs). |

| 419 | iiii. | "Temporary Assistance to Needy Families" or "TANF" |
| 420 | | shall mean benefits as provided for in New York Social |
| 421 | | Services Law Article 5, Title 10, and the Regulations |
| 422 | | and Administrative Directives of the New York State |
| 423 | | Office of Temporary and Disability Assistance. |

| 424 | jjjj. | "Veterans Administration Benefits" shall mean benefits |
| 425 | | provided by the U.S. Department of Veterans' Affairs. |

| 426 | jjjj.1. | "WeCARE" shall mean the entity designated to assess |
| 427 | | the ability of applicants for  and recipients of Public |
| 428 | | Assistance to participate in work activities as further |
| 429 | | described in the New York Social Services Law § 336 |
| 430 | | and the New York State Department of Social Services |
| 431 | | regulations. |

| 432 | kkkk. | "WMS" or "Welfare Management System" shall mean |
| 433 | | the computerized information system maintained by the |
| 434 | | State of New York and employed by HRA to track the |
| 435 | | application for and receipt of all benefits obtained by |
| 436 | | individuals through application to HRA, and/or any |
| 437 | | other information system designed by the State of New |
| 438 | | York to replace or supplement such system. |

439    2.    Defined terms used in this Agreement but not defined above shall have

440    the meaning ascribed to them in this Agreement and the Exhibits annexed hereto.

441    3.    The defined terms used herein are used solely for purposes of this

442    Agreement and are not intended and should not be construed to reflect the Parties'

443    understanding of these terms for any other purpose.

1003086436v1

**Exhibit A**

444  II.    **SETTLEMENT RELIEF**

445        A.    <u>**General Provisions**</u>

446        4.    Defendants shall provide Discharge Planning in accordance with the

447  terms of this Agreement.

448        5.    Discharge Planning shall include (a) an individualized assessment of a

449  person's need for (i) clinically appropriate forms of continuing mental health

450  treatment and supportive services including but not limited to, where clinically

451  appropriate, medication, substance abuse treatment, and case management services,

452  (ii) public benefits, including but not limited to Medicaid, Public Assistance and

453  SNAP, (iii) appropriate housing or appropriate shelter if housing cannot be located

454  prior to the individual's release from incarceration in a City Jail, and (iv)

455  transportation to appropriate housing or shelter; and (b) assisting each individual with

456  obtaining the services and resources set forth in (a), in accordance with each

457  individual's need for those services and resources and in accordance with the terms of

458  this Settlement Agreement.

459        6.    The Parties acknowledge that the extent of Discharge Planning to be

460  provided to each individual may vary according to (a) the nature and severity of an

461  individual's Mental Illness, (b) the needs of the individual, including the resources the

462  individual has in place in the community and the individual's ability to function

463  independently after release from incarceration, (c) the individual's length of

464  incarceration, (d) whether the individual's Release Date is known or becomes known

465  to Defendants, (e) the individual's availability during his or her incarceration, and (f)

- 14 -

**Exhibit A**

466   the extent of the individual's cooperation with Discharge Planning efforts, including

467   timely availing himself or herself of services provided at SPAN Offices.

468         7.      The Parties acknowledge that the issue of whether and how to continue

469   an individual's mental health care upon release from a City Jail to the community

470   does not arise with respect to Class Members released from City Jails directly to the

471   custody of any state, the United States, or another local custodial correctional facility.

472   Defendants agree to continue their current practices with respect to such Class

473   Members, including but not limited to transmitting relevant Mental Health Records to

474   such facilities.

475         8.      Any Class Member who chooses not to accept all Discharge Planning

476   services to which he or she is entitled pursuant to this Agreement shall retain his or

477   her right to any services that he or she does accept.  Defendants shall advise all Class

478   Members of their right to accept some but not all Discharge Planning services.

479         9.      Except as otherwise provided herein, Defendants shall use their best

480   efforts to perform all obligations required pursuant to this Agreement within the

481   applicable time frames set forth in this Agreement.

482         **B.**      **Contact with the Community**

483         10.      Defendants shall create a mechanism to allow Significant Others and

484   other members of the community who have clinical information or other information

485   relevant to the mental health treatment of or Discharge Planning efforts for an

486   individual incarcerated in a City Jail to relay that information to Discharge Planning

487   Staff or mental health staff in City Jails.  This mechanism shall, at a minimum,

488   include a system that enables those wishing to communicate information regarding a

- 15 -

489  particular individual to Defendants to do so by telephone.  When appropriate, a

490  member of the Discharge Planning Staff shall return such telephone calls and shall

491  involve in Discharge Planning efforts Significant Others who so contact Defendants if

492  the individual consents and the Significant Other so desires.

493      11.  Defendants shall create a mechanism to allow any individual who

494  contacts the mental health staff or Discharge Planning Staff to leave an individual

495  message for any member of the mental health staff or Discharge Planning Staff at any

496  time.  Defendants shall also ensure that each such message is promptly relayed to

497  other mental health staff or Discharge Planning Staff as appropriate.

498      12.  The mechanisms described in ¶¶ 10 - 11 above shall be in place and

499  fully operational no later than the Implementation Date.

500      13.  Defendants (a) shall publicize the mechanisms described in ¶¶ 10 - 11

501  above (including the telephone numbers established to permit the communications

502  described in ¶¶ 10 - 11 above) as part of the community education efforts described in

503  § VII below and (b) shall provide the telephone numbers established to permit the

504  communications described in ¶¶ 10 - 11 above to (i) Class Counsel and (ii), upon

505  request, to other individuals in the community.  Defendants shall also promptly notify

506  Class Counsel of any changes to such telephone numbers.

507  **C.  Determination of Class Membership**
508         **And Creation of a Discharge Plan**

509      14.  Defendants shall assess each individual incarcerated in a City Jail for

510  his or her need for medical treatment (the "Medical Assessment"), including but not

511  limited to an assessment of whether the individual should be referred for a mental

- 16 -

**Exhibit A**

512    health assessment.  The Medical Assessment, as currently set forth in the New York

513    City Board of Correction's Minimum Standards, shall occur within the first twenty-

514    four hours of each inmate's incarceration.  Defendants may conduct subsequent

515    Medical Assessments, including an assessment of whether the individual should be

516    referred for a mental health assessment, periodically during each inmate's

517    incarceration.

518           15.    Each individual referred for a mental health assessment as a result of a

519    Medical Assessment shall be assessed by Defendants for his or her need for mental

520    health treatment (the "Initial Assessment") within three days after the Medical

521    Assessment.

522           16.    For all individuals who are housed in any of the Segregated Mental

523    Health Units, and who are assessed at their Initial Assessment as needing follow up

524    by mental health staff for further assessment and/or treatment, a mental health

525    clinician shall complete a Comprehensive Treatment Plan ("CTP") within seven days

526    of the date on which the Initial Assessment occurs (the "Initial Assessment Date").

527           17.    For all individuals who are housed in General Population, and who are

528    assessed at their Initial Assessment as needing follow up by mental health staff for

529    further assessment and/or treatment, a mental health clinician shall complete a CTP

530    within fifteen days of the Initial Assessment Date.

531           18.    Each individual for whom a CTP is to be completed in accordance

532    with ¶¶ 16 - 17 above shall be designated a Class Member as of the date of

533    completion of his or her CTP; provided, however, that any individual who is

534    determined to be in need of psychotropic medication for treatment of a Mental Illness

- 17 -

**Exhibit A**

535     prior to the completion of his or her CTP shall be designated a Class Member as of

536     the date of such determination.

537          18.1.    For each Class Member, a Discharge Plan shall be completed within

538     seven business days of the completion of the CTP.

539          19.     Any individual who is assessed at his or her Initial Assessment as

540     needing follow up by mental health staff for further assessment and/or treatment but

541     who is released from incarceration before he or she is designated a Class Member

542     pursuant to ¶ 18 above (a) shall be deemed a Class Member as of his or her Release

543     Date, (b) shall be entitled to utilize the SPAN Offices and receive any other services

544     to which he or she is entitled as a Class Member, (c) shall receive a Discharge

545     Summary (to the extent the information required by the Discharge Summary is

546     available), and (d) shall receive all information describing the SPAN Offices and his

547     or her rights as a Class Member, as provided in ¶ 21 and ¶ 37 below.

548          20.     DOC shall note in its IIS that an individual has been designated or

549     deemed a Class Member pursuant to ¶¶ 18 - 19 above within 24 hours of the time at

550     which the individual is designated or deemed a Class Member.

551          21.     Defendants shall distribute to each individual who is designated or

552     deemed a Class Member written materials that contain information about Class

553     Members' right to Discharge Planning services as provided in this Agreement.  Such

554     materials shall be distributed to each individual at the time he or she is designated or

555     deemed a Class Member and, if the individual is released directly from a City Jail,

556     upon his or her release from incarceration.

1003086436v1

**Exhibit A**

557        22.    Class Counsel and Defendants' Counsel shall together develop the

558  form of written materials to be provided to individuals pursuant to the immediately

559  preceding ¶ 21, and shall submit those written materials to the Court for its approval

560  no later than 15 days prior to the Fairness Hearing.

561        23.    Defendants shall provide each Class Member with a Discharge

562  Summary upon the Class Member's release from a City Jail or upon the Class

563  Member's first visit to a SPAN Office.

564     **D.**     **Designation of a Class Member as**
565              **Seriously Mentally Ill**

566        24.    At the time of the Initial Assessment, Defendants shall assess whether

567  an individual assessed as needing further assessment and/or mental health treatment

568  should be classified as Seriously Mentally Ill and shall immediately document each

569  individual's SMI status in the individual's Mental Health Record. Evidence of

570  significant functional impairment or clinical distress as a result of a DSM-5 diagnosis,

571  if any, shall be documented irrespective of the SMI determination.

572        25.    [Removed]

573        26.    At the time an individual is determined to be a Class Member,

574  Defendants shall assess whether the Class Member is Seriously Mentally Ill and shall

575  immediately designate the Class Member as Seriously Mentally Ill in the Class

576  Member's Mental Health Record and the Discharge Planning MIS if the assessment

577  indicates that such designation is appropriate.

578        27.    Any Class Member or individual prescribed an anti-psychotic or mood

579  stabilizing medication to treat a psychiatric condition during his or her incarceration

1003086436v1

**Exhibit A**

580   before his or her CTP shall be presumptively classified as SMI for purposes of this

581   Agreement as of the date of such prescription and shall be entitled to the additional

582   services provided in this Agreement for such Class Members.  The Compliance

583   Monitors shall compile a list of such medications and update the list as appropriate at

584   least annually.  If a mental health clinician determines, at any time, that any such

585   Class Member or individual does not meet the criteria for Serious Mental Illness

586   despite the prescription of such medication, then the Class Member or individual shall

587   not be classified as SMI, and the reason for that determination shall be specifically

588   documented in the Class Member's or individual's Mental Health Record.

589         28.      After an individual is designated or deemed a Class Member,

590   Defendants shall periodically reassess whether the Class Member is Seriously

591   Mentally Ill during subsequent interactions between a mental health clinician and the

592   Class Member, and Defendants shall immediately designate the Class Member as

593   Seriously Mentally Ill in the Class Member's Mental Health Record and the

594   Discharge Planning MIS if any reassessment indicates that such designation is

595   appropriate.  New evidence of significant functional impairment or clinical distress as

596   a result of a DSM-5 diagnosis, if any, shall be documented irrespective of the SMI

597   determination.

598         29.      If at any point during a Class Member's incarceration, a mental health

599   clinician determines that a Class Member is Seriously Mentally Ill, Defendants shall

600   provide the Class Member with all services to which a Class Member determined to

601   be SMI is entitled pursuant to this Settlement Agreement.

1003086436v1

602        30.      An individual who is determined during the Initial Assessment to be

603     Seriously Mentally Ill and who is released from incarceration before he or she is

604     designated a Class Member, shall be entitled to transportation pursuant to the terms of

605     § II.H.6 below and, following his or her release, to all the post-release Discharge

606     Planning services available to a Class Member who is Seriously Mentally Ill under

607     this Settlement Agreement.

608        31.      If a Class Member is designated as Seriously Mentally Ill and is

609     subsequently re-designated as not Seriously Mentally Ill, a mental health clinician

610     shall document in the Class Member's Mental Health Record the basis for such re-

611     designation.

612        **E.**      <u>**Release of Class Members from DOC Custody**</u>

613        32.      Beginning on the Implementation Date, Defendants shall ensure that

614     all Class Members released from incarceration are so released during daylight hours,

615     and in any event no earlier than 8:00 a.m.; <u>provided</u>, <u>however</u>, that this provision shall

616     not apply (a) to Class Members released from incarceration on bail or pursuant to

617     other court orders requiring that they be released immediately, or (b) to Class

618     Members released from DOC custody directly from a courthouse.

619        32.1     For those Class Members held solely pursuant to an alleged parole

620     violation, Defendants shall use best efforts to release such Class Members from

621     incarceration during daylight hours; <u>provided</u>, <u>however</u>, that where a non-DOC escort

622     is required as a condition of release of any such Class Member, Defendants shall

623     reasonably prioritize and make best efforts to release such Class Member from

624     incarceration with sufficient time to be escorted to his or her assigned treatment

625    program or residence.  Where a Class Member held solely pursuant to an alleged

626    parole violation is not released from incarceration during daylight hours, or, if

627    required, with sufficient time to be escorted to his or her assigned treatment program

628    or residence, DOC shall document the circumstances resulting in the delay.

629        33.    A Class Member who would otherwise have been released from DOC

630    custody directly from a courthouse shall not be returned to a City Jail because of his

631    or her status as a Class Member.

632        **F.**    **Determination of Class Members' Release Dates**

633        34.    For a period beginning on the Implementation Date and ending six

634    months after that date, Defendants shall use reasonable efforts to ascertain the

635    Release Date of each Class Member housed at the Rose M. Singer Center or the Anna

636    M. Kross Center whose Release Date is unknown to Defendants.  Such efforts shall

637    include but not be limited to attempting to contact the Class Member's defense

638    attorney, if appropriate, and consulting the IIS.

639        35.    At the end of the six-month period described in ¶ 34 above, the

640    Compliance Monitors, in consultation with the Parties, shall assess (a) whether the

641    information obtained by Defendants through the efforts described in ¶ 34 above is

642    generally beneficial in Discharge Planning and (b) if so, whether Defendants should

643    be required to continue such efforts and expand such efforts to other City Jail

644    facilities.  The Compliance Monitors, in consultation with the Parties, shall also

645    determine whether Defendants used reasonable efforts to ascertain Class Members'

646    Release Dates.  If the Compliance Monitors find that Defendants did not use

647    reasonable efforts, the six-month trial period described in ¶ 34 above shall continue

1003086436v1

Case 1:19-cv-01959-PAE-SLC   Document 26-1   Filed 03/03/20   Page 27 of 84

**Exhibit A**

648    for another six months.  The Compliance Monitors' determination with respect to all

649    issues described in this ¶ 35 shall be binding on the Parties.

650    **G.    SPAN Offices**

651    36.    Except as otherwise provided in this Agreement, all Class Members

652    who are released from incarceration without a completed or fully implemented

653    Discharge Plan shall be entitled to receive all of the Discharge Planning services set

654    forth in § II of this Agreement from any of the SPAN Offices, which are to be located

655    within one-half mile of the criminal courts in every borough except Staten Island,

656    provided that the Class Member presents himself or herself at a SPAN Office within

657    thirty days of his or her Release Date. However, if Defendants establish an office

658    within one-half mile of the criminal court in a borough to assist Class Members in

659    obtaining prescriptions pursuant to ¶ 53, the SPAN office serving that borough may

660    be located up to five miles from the criminal court.  The SPAN Offices shall be open

661    from 10:00 a.m. to 6:00 p.m.

662    37.    Defendants shall inform Class Members in writing of the location of

663    all SPAN Offices and their hours of operation, the services provided at SPAN Offices

664    and the restrictions on the availability of such services.  Defendants shall provide a

665    writing containing this information to each Class Member at the time the Class

666    Member is first designated or deemed to be a Class Member and at the time of the

667    Class Member's release from incarceration, if the Class Member is released from a

668    City Jail.  In addition, Defendants shall make this writing available to Class Members

669    released from Court, at or prior to the time at which each such Class Member is

670    released from DOC custody.

- 23 -

1003086436v1

**Exhibit A**

671       38.       Class Counsel and Defendants' Counsel shall together develop the

672   form of writing to be provided to Class Members pursuant to the immediately

673   preceding ¶ 37, and shall submit that writing to the Court for its approval no later than

674   15 days prior to the Fairness Hearing.

675       39.       The Discharge Planning Staff and/or mental health staff in City Jails

676   shall, in face-to-face meetings with Class Members and individuals for whom CTPs

677   are being prepared, encourage all such Class Members and individuals to utilize the

678   SPAN Offices.  Such face-to-face meetings shall occur (a) periodically during the

679   incarceration of each such Class Member and individual and (b) as close to the

680   Release Date of each such Class Member and individual as is practicable.  In

681   addition, SPAN Office Staff shall periodically visit City Jails to conduct group

682   meetings with up to eight Class Members and/or individuals for whom CTPs are

683   being prepared and encourage them to utilize the SPAN Offices.  Nothing in this ¶ 39

684   shall limit SPAN Office Staff from conducting group meetings with more than eight

685   Class Members if DOC approves such meetings.

686       40.       [Removed]

687   **H.**       **Elements of Discharge Planning**

688       41.       Defendants shall use their best efforts to complete each assessment and

689   provide all Discharge Planning services described in this § II during each Class

690   Member's incarceration in a City Jail.  If such assessments and provision of

691   Discharge Planning services are not completed during a Class Member's

692   incarceration, SPAN Office Staff shall use their best efforts to complete each

693   assessment and provide all services described in § II of this Agreement to each Class

- 24 -

**Exhibit A**

694    Member, provided that the Class Member presents himself or herself at a SPAN

695    Office within thirty days after his or her Release Date.

696        **1.    Continuing Mental Health Treatment and Services**

697        42.    As part of Discharge Planning, Defendants shall in consultation with

698    mental health staff in City Jails and prior to each Class Member's Release Date, (a)

699    assess each Class Member's need for clinically appropriate forms of continuing

700    mental health treatment and services following his or her Release Date, including

701    medication, case management services, substance abuse treatment, and psychiatric

702    rehabilitation services, following his or her Release Date and (b) provide to each

703    Class Member appropriate appointments or referrals to receive such treatment and

704    services.

705        a.    ***Identification of Clinically***
706            ***Appropriate Mental Health Care Programs***

707        43.    Discharge Planning Staff or SPAN Office Staff, as applicable, shall

708    identify a clinically appropriate mental health care program or programs for each

709    Class Member who is determined to need continuing mental health treatment or

710    services following his or her Release Date.

711        44.    In determining whether a mental health care program is appropriate for

712    any particular Class Member, Discharge Planning Staff or SPAN Office Staff, as

713    applicable, shall take into consideration (a) the Class Member's preferences; (b) the

714    geographic location of the Class Member's expected permanent or temporary

715    housing, if known, or, if such location is unknown, the Class Member's pre-

716    incarceration address (unless the Class Member requests otherwise); (c) the Class

- 25 -

717    Member's mental health treatment needs; (d) the Class Member's need for integrated

718    treatment for mental illness and drug or alcohol dependence; (e) the Class Member's

719    prior treatment history in the community provided to Defendants by the Class

720    Member or other sources; and (f) the mental health care program's capacity and

721    willingness to accept the Class Member.

722                       b.       ***Appointments or Referrals for***
723                                 ***Incarcerated Class Members***

724        45.     For each Class Member whose Release Date is known or becomes

725    known to Discharge Planning Staff at least one business day in advance of the Class

726    Member's release from incarceration, the Discharge Planning Staff shall (a) make an

727    appointment for the Class Member with the mental health care program or programs

728    identified in accordance with the criteria set forth in ¶ 44 above on the first date

729    available following the Class Member's Release Date, (b) orally advise the Class

730    Member of the time, date and place of the appointment, and (c) provide the Class

731    Member with an appointment card or other writing that includes the time, date and

732    place of the appointment.

733        46.     For each Class Member whose Release Date is not known or does not

734    become known to Discharge Planning Staff at least one business day in advance of

735    the Class Member's release from incarceration, the Discharge Planning Staff shall (a)

736    refer the Class Member to the mental health care program or programs identified in

737    accordance with the criteria set forth in ¶ 44 above by (i) forwarding referral

738    information for the Class Member to such program or programs and (ii) obtaining to

739    the extent possible an agreement from such program or programs to accept the Class

- 26 -

740    Member; and (b) advise the Class Member, prior to the Class Member's Release

741    Date, both orally and in writing, of the identity and location of such mental health

742    care program or programs and the steps required of the Class Member to obtain

743    services from such program or programs.  If the Class Member's Release Date later

744    becomes known to Discharge Planning Staff, the Discharge Planning Staff shall make

745    an appointment for the Class Member in accordance with ¶ 45 above.

746                  c.     ***Appointments for Released Class Members***

747         47.     Except as provided in ¶ 54 below, for each Class Member who

748    presents himself or herself at a SPAN Office within thirty days of his or her Release

749    Date, the SPAN Office Staff shall, during the Class Member's first visit to a SPAN

750    Office, (a) make an appointment or appointments for the Class Member on the next

751    available date with the mental health care program or programs identified in

752    accordance with the criteria set forth in ¶ 44 above, (b) orally advise the Class

753    Member of the time, date and place of the appointment or appointments, and (c)

754    provide the Class Member with an appointment card or other writing that includes the

755    time, date and place of the appointment or appointments.

756         48.     SPAN Office Staff shall continue to attempt to place a Class Member

757    in a mental health treatment program or programs identified in accordance with the

758    criteria set forth in ¶ 44 above for up to thirty days after the Class Member presents

759    himself or herself to a SPAN Office, provided the Class Member initially presents

760    himself or herself to a SPAN Office within thirty days of his or her Release Date.

1003086436v1

**Exhibit A**

761                 d.       ***Follow-up for Seriously Mentally Ill Class Members***

762          49.       Defendants shall contact the community mental health care program or

763   programs to which each Class Member designated as Seriously Mentally Ill was

764   referred or with which each such Class Member had an appointment to determine

765   whether the Class Member appeared at the program or programs.  Defendants shall

766   perform such follow-up within three days of the scheduled appointment or the Class

767   Member's Release Date, as applicable; provided, however, that if the Class Member

768   has been accepted as a client of a LINK program, the LINK program shall perform

769   such follow up within five days.  If Defendants determine that the Class Member did

770   not appear, Defendants shall use their best efforts for up to 30 days following the

771   Class Member's Release Date to contact the Class Member and schedule another

772   appointment.

773                 **2.       Access to Medication and Prescriptions**

774          50.       As part of Discharge Planning, Defendants shall, in consultation with

775   mental health staff in the City Jails and prior to each Class Member's Release Date,

776   (a) assess each Class Member's need for continued psychotropic medication for

777   treatment of a Mental Illness ("psychotropic medication") following his or her

778   Release Date and (b) provide each Class Member assessed as needing continued

779   psychotropic medication following his or her Release Date with a supply of

780   medication(s) and/or prescription(s) as provided in this § II.H.2.

781          51.       Unless and until Defendants record the following information in an

782   electronic database accessible to the Compliance Monitors, Defendants shall record in

783   each Class Member's Mental Health Record (a) the date on which the medication(s)

- 28 -

**Exhibit A**

784    and/or prescription(s) provided pursuant to the following ¶ 52 and ¶ 54 were provided

785    to the Class Member; (b) the types of medication(s) and quantities thereof provided to

786    the Class Member; and (c) the types of medication(s) and quantities thereof covered

787    by prescription(s) provided to the Class Member.

788           a.    ***Class Members Released Directly From City Jails***

789        52.    Where clinically appropriate and except as provided in ¶ 56 below,

790    Defendants shall provide to each Class Member who is released from a City Jail and

791    is in need of continuing psychiatric medication (a) a 7-day supply of all psychotropic

792    medications that he or she had been receiving immediately prior to his or her Release

793    Date, and (b) a 14-day electronic prescription ("e-prescription") for all such

794    medications, with one refill.  Such supply of medication(s) shall be provided at the

795    time the Class Member leaves the City Jail facility from which he or she is being

796    released.  Such e-prescription(s) shall be transmitted to a pharmacy by Defendants

797    after consultation with the Class Member and/or the Class Member's treatment

798    program, and the Class Member shall be provided, in writing, the name and location

799    of the pharmacy to which the e-prescription has been transmitted, instructions for

800    filling the e-prescription, as well as instructions to visit SPAN if further assistance is

801    needed. If Defendants do not provide a Class Member with the medication(s) and/or

802    transmit e-prescription(s) as described herein, or if Defendants provide a Class

803    Member with medication(s) and/or transmit e-prescription(s) for periods shorter than

804    the time periods set forth in this ¶ 52, Defendants shall document the clinical reason

805    for denying that Class Member such medication(s) and/or e-prescription(s), or for

806    limiting the supply thereof.

807      53.    For each Class Member who has been released from a City Jail and

808  who presents himself or herself to a SPAN Office within thirty days of his or her

809  Release Date and indicating any difficulty filling the prescription provided pursuant

810  to ¶ 52 above, SPAN Office Staff shall, if the Class Member so desires, contact CHS,

811  which shall transmit an e-prescription to a pharmacy selected by the Class Member or

812  located reasonably near to the SPAN Office or the Class Member's post-incarceration

813  address, so that the Class Member may fill the prescription provided pursuant to ¶ 52

814  above.

815                  b.    ***Class Members Released Directly From Court***

816      54.    For each Class Member who is released from DOC custody directly

817  from a courthouse and who presents himself or herself at a SPAN Office within

818  fourteen (14) days of his or her Release Date, SPAN Office Staff shall take the

819  following steps to ensure that the Class Member has access to a supply of continuing

820  psychotropic medications, if clinically appropriate:

821              (i)    On the date on which the Class Member presents himself or
822                     herself at the SPAN Office, the SPAN Office Staff shall make
823                     an appointment for the Class Member with a community clinic
824                     or mental health treatment center that will, among other things,
825                     conduct a psychiatric evaluation of the Class Member, assess
826                     the Class Member's need for continuing psychotropic
827                     medication, and prescribe such medication if clinically
828                     appropriate.  Such appointment shall be scheduled to occur
829                     within seven days of the date on which the Class Member
830                     presents himself or herself at the SPAN Office, and the
831                     community clinic or mental health treatment center with which
832                     the appointment is made shall be located in the same borough
833                     as the SPAN Office, unless the Class Member requests another
834                     borough.  Prior to the date of that appointment, the SPAN
835                     Office Staff shall obtain relevant clinical information
836                     concerning the Class Member from CHS and transmit that
837                     information to the clinic or mental health treatment center.

- 30 -

(ii)   On the date on which the Class Member presents himself or herself at the SPAN Office, the SPAN Office Staff shall also contact CHS, which shall, unless not clinically appropriate, transmit an e-prescription to a pharmacy selected by the Class Member or located reasonably near to the SPAN Office for a clinically appropriate supply of all psychotropic medications the Class Member had been receiving immediately prior to his or her Release Date. The prescription provided pursuant to this subparagraph 54 (ii) shall be sufficient to provide the Class Member with a supply of psychotropic medications that will last until the date of the scheduled appointment made pursuant to subparagraph 54 (i) occurs or for 14 days, whichever date is sooner. If CHS determines that providing the prescription contemplated by this subparagraph 54 (ii) would not be clinically appropriate, CHS shall document in detail the reasons for such determination.

(iii)   Defendants shall ensure that every Class Member on whose behalf a prescription is provided pursuant to subparagraph 54 (ii) has the means to pay for the medication to be dispensed under that prescription on the same day the Class Member presents himself or herself at the SPAN Office.

55.   For each Class Member who is released from DOC custody directly from a courthouse and who presents himself or herself at a SPAN Office after his or her Release Date, SPAN Office Staff shall (a) refer the Class Member to a community clinic or mental health treatment center that (i) is in the same borough as the SPAN Office, unless the Class Member requests another borough, and (ii) agrees to see the Class Member promptly to assess his or her need for a prescription for psychotropic medications; and (b) facilitate the transmission of all relevant clinical information regarding the Class Member from Defendants to such community clinic or mental health treatment center. SPAN Office Staff shall also, where practicable, escort each such Class Member to the community clinic or mental health treatment

- 31 -

**Exhibit A**

869    center or arrange transportation, which may be provided by the healthcare provider,

870    from the SPAN Office to the community clinic or mental health treatment center.

871              c.    ***Class Members Accepted Into***
872                 ***Residential Treatment Programs***

873        56.    For a Class Member who is accepted into a residential treatment

874    program prior to his or her Release Date, Defendants will provide to the program, on

875    the Class Member's Release Date, the supply of medication(s) that such treatment

876    program requires the Class Member to have at the time of intake to the treatment

877    program and an active MGP card, as described in § II.H.3.d below.  Such provision of

878    medication to the residential treatment program shall be instead of, and not in

879    addition to, the medication provided to Class Members released directly from City

880    Jails pursuant to ¶ 52 above.

881        3.    **Access to Medicaid and**
882           **Medication Grant Program Benefits**

883        57.    As part of Discharge Planning, Defendants shall use their best efforts

884    to ensure that each Class Member who is eligible for Medicaid benefits shall have

885    either (a) unsuspended Medicaid benefits within four (4) business days of his or her

886    Release Date, or (b) activated Medicaid benefits within seven (7) business days of his

887    or her Release Date as set forth in paragraph 64.1 below.   For each Class Member

888    who is in need of and appears potentially eligible for Medicaid benefits, Defendants

889    shall use their best efforts to ensure that each such Class Member has a submitted and

890    pending Medicaid application, and access to Medication Grant Program benefits on

891    his or her Release Date, as set forth respectively in ¶¶ 63-65 and ¶¶ 69-74.

1003086436v1

**Exhibit A**

892          57.1.   Without limiting the generality of ¶ 57 above, the Parties acknowledge

893     that Defendants' responsibility for the administration of the Medicaid program is

894     subject to the laws, regulations and rules governing the Medicaid program, including,

895     but not limited to, NY Social Services Law § 365-n[1], which governs the transfer of

896     administration of the Medicaid program from the New York City Human Resources

897     Administration to the New York State Department of Health.

898          58.     [Removed]

899          59.     The process of determining each Class Member's eligibility for

900     Medicaid (the "Pre-Screening Process") shall be completed for each Class Member

901     who is incarcerated on the date on which his or her CTP is completed.

902          60.     For each Class Member who is released from DOC custody prior to

903     completion of the CTP and who appears at a SPAN Office within 30 days after his or

904     her Release Date, SPAN Office Staff shall initiate and complete the Pre-Screening

905     Process during the Class Member's initial visit to a SPAN Office.

906          60.1.   In the case of Class Members with Medicaid coverage that has been

907     suspended during incarceration in a City Jail pursuant to Social Services Law

908     § 366[1-a], Defendants shall take reasonable steps within their control to ensure that

909     each such Class Member's Medicaid coverage is unsuspended within four (4)

910     business days of discharge from a City Jail.

911          61.     [Removed]

912          62.     [Removed]

913          63.     In the case of Class Members without Medicaid coverage (i.e., no

914     Medicaid coverage that is either active or suspended during incarceration pursuant to

**Exhibit A**

915    Social Services Law § 366[1-a]), Discharge Planning Staff or SPAN Office Staff, as

916    applicable, shall assist each Class Member who is assessed as potentially eligible for

917    Medicaid benefits in securing necessary documentation for and in completing and

918    submitting an application for Medicaid to HRA for processing in accordance with

919    HRA regulations.

920         64.    For each incarcerated Class Member described in ¶ 63 above,

921    Discharge Planning Staff shall (a) complete a Medicaid application within six

922    business days of the completion of the CTP and (b) submit such application to HRA

923    within two business days of the completion of such application.

924         64.1.   Defendants shall take reasonable steps within their control to ensure

925    that each Class Member whose Medicaid application is submitted during his or her

926    incarceration in a City Jail and who is found eligible for Medicaid shall receive

927    Medicaid within seven business days of discharge from a City Jail.

928         65.    For each Class Member described in ¶ 63 above who is released from

929    DOC custody before a Medicaid application has been completed and submitted to

930    HRA on his or her behalf, SPAN Office Staff shall assist in securing necessary

931    documentation for, and shall complete and submit a Medicaid application to HRA

932    during the Class Member's initial visit to a SPAN Office.

933         66.    [Removed]

934         67.    [Removed]

935         68.    [Removed]

936         69.    Discharge Planning Staff or SPAN Office Staff, as applicable, shall

937    enroll in the Medication Grant Program each Class Member who appears eligible for

- 34 -

1003086436v1

**Exhibit A**

938   Medicaid, and has a pending new Medicaid application, and whose Medicaid benefits

939   are not active as of the Class Member's Release Date.  Defendants shall provide to

940   each Class Member enrolled in the Medication Grant Program an active MGP card at

941   the time of his or her enrollment.  If the MGP card cannot be activated at the time of

942   enrollment because of the unavailability of the New York State vendor that

943   administers MGP, Defendants (a) shall provide an MGP card to the Class Member on

944   the day he or she is enrolled in MGP, (b) shall cause the MGP card to be activated on

945   the next business day with no further action required on the part of the Class Member,

946   and (c) shall ensure that the Class Member has a means to pay for any psychotropic

947   medications that the Class Member requires prior to and until the activation of the

948   MGP card.

949       69.1    Defendants shall use best efforts to secure necessary approvals from

950   the New York State Department of Health to enroll in the Medication Grant Program

951   those Class Members whose existing Medicaid benefits are being unsuspended

952   pursuant to Social Services Law § 336[1-a] and shall confer with the Compliance

953   Monitors at least every six months regarding their efforts to implement such a system.

954       70.    For each Class Member described in ¶ 69 above who is released from

955   incarceration from a City Jail, or from court with prior notice, and for whom the Pre-

956   Screening Process was completed more than three business days prior to his or her

957   Release Date, Discharge Planning Staff (a) shall enroll the Class Member in the

958   Medication Grant Program on or before his or her Release Date; (b) shall provide an

959   MGP card to the Class Member on or before his or her Release Date; and (c) shall

- 35 -

**Exhibit A**

960    complete and submit a Medicaid application on behalf of the Class Member in

961    accordance with ¶¶ 63-65 above.

962          71.    For each Class Member described in ¶ 69 above who is released from

963    incarceration from a City Jail before the Pre-Screening Process has been completed,

964    less than three business days after completion of his or her Pre-Screening Process, or

965    directly from court without prior notice, SPAN Office Staff (a) shall enroll the Class

966    Member in the Medication Grant Program during his or her initial visit to a SPAN

967    Office; (b) shall provide an MGP card to the Class Member during his or her initial

968    visit to a SPAN Office; and (c) shall complete a Medicaid application on behalf of the

969    Class Member in accordance with ¶¶ 63-65 above during his or her initial visit to a

970    SPAN Office, and cause that Medicaid application to be submitted to HRA on behalf

971    of the Class Member within two business days.

972          72.    Upon a Class Member's enrollment in the Medication Grant Program,

973    Discharge Planning Staff or SPAN Office Staff, as applicable, shall provide the Class

974    Member with literature, to be approved by Class Counsel, explaining how to use the

975    MGP card and providing (a) a list of the five largest pharmacy chains in the New

976    York City area that will accept MGP cards and (b) the addresses of each outlet of

977    such chains located in the borough in which the SPAN Office is located.

978          73.    Plaintiffs acknowledge (a) that a Class Member's eligibility for the

979    Medication Grant Program is dependent on the Class Member submitting a Medicaid

980    application prior to or within seven days of his or her Release Date, and (b) that such

981    eligibility remains in effect until such time as HRA activates the Class Member's

982    Medicaid benefits.

- 36 -

**Exhibit A**

983      74.    The Parties acknowledge that the Medication Grant Program is

984    administered by the State of New York and is subject to repeal or modification.  In

985    the event the State of New York repeals or modifies the Medication Grant Program

986    during the period this Agreement is in effect, Defendants will implement a system to

987    provide Class Members with equivalent benefits that are consistent with the terms of

988    this Agreement.  The Parties agree to work in good faith to design and implement

989    such a system if necessary.

990           **4.    Public Assistance and SNAP Benefits**

991      75.    As part of Discharge Planning, Defendants, prior to each Class

992    Member's Release Date, (a) shall assess the ability of each Class Member determined

993    to be Seriously Mentally Ill to pay for essentials such as food, clothing and housing

994    following his or her release from incarceration and (b) shall use their best efforts to

995    secure necessary documentation for and complete and submit relevant application(s)

996    for Public Assistance and SNAP benefits on behalf of each such Class Member so

997    that such benefits will be available on the Class Member's first visit to an HRA Job

998    Center after his or her Release Date.

999      76.    The obligations set forth in this § II.H.4 shall apply only to Class

1000    Members determined or deemed to be Seriously Mentally Ill, and use of the term

1001    "Class Members" in this § II.H.4 shall refer only to Class Members determined or

1002    deemed to be Seriously Mentally Ill.

1003      77.    Appropriate employees of Job Centers operated by HRA shall receive

1004    training regarding the public benefits needs of the Class and an explanation of HRA's

1005    obligations to Class Members pursuant to this Settlement Agreement.

- 37 -

1003086436v1

**Exhibit A**

1006        78.    Defendants shall assist each Class Member who appears potentially

1007   eligible for Public Assistance or SNAP to secure necessary documentation for a

1008   Public Assistance and SNAP application and (a) shall assist the Class Member such

1009   that the Public Assistance and SNAP application shall be completed within three

1010   business days of the completion of each such Class Member's CTP and (b) shall

1011   submit to HRA such application within two business days of its completion. A Public

1012   Assistance and SNAP application to be submitted on behalf of a Class Member shall

1013   include a written request to be completed by the Class Member that his or her

1014   application be pended as described in ¶¶ 79 - 80 below. HRA shall register such

1015   application on the same day it receives the application.

1016        79.    If a Class Member remains incarcerated 45 days after HRA has

1017   registered his or her Public Assistance and SNAP application, HRA shall defer any

1018   determination with respect to such application for an additional 45 days or until the

1019   Class Member appears at a Job Center, whichever date is earlier (the "Pending

1020   Period").

1021        80.    If, at the end of the Pending Period, the Class Member remains

1022   incarcerated in a City Jail, Defendants shall assist the Class Member in promptly

1023   completing and submitting another Public Assistance and SNAP application.

1024   Defendants shall begin another Pending Period and shall continue this process until

1025   the Class Member is no longer incarcerated in a City Jail.

1026        81.    If a Class Member is released (a) after his or her application for Public

1027   Assistance and SNAP was registered by HRA and (b) before the conclusion of the

1028   Pending Period, the Class Member shall be required to make one visit each to a Job

**Exhibit A**

1029    Center and the New York State vendor who supplies EBT cards to activate his or her

1030    Public Assistance or SNAP benefits.  The visits described in this ¶ 81 shall be the

1031    only visits required to activate a Class Member's Public Assistance and/or SNAP

1032    benefits after his or her Release Date, and, if the Class Member is determined to be

1033    eligible for Public Assistance and/or SNAP benefits, such benefits shall be

1034    immediately available upon completion of the visits described in this ¶ 81; provided,

1035    however, that if additional documentation is necessary to complete the Class

1036    Member's Public Assistance and SNAP application, additional visits to a Job Center

1037    may be required.

1038         81.1    If a Class Member appears at a Job Center within 30 days of his or her

1039    Release Date and is found eligible for SNAP benefits, the Class Member will receive

1040    SNAP benefits retroactive to his or her Release Date.  If the Class Member appears at

1041    a Job Center more than 30 days after his or her Release Date, the Class Member shall

1042    receive assistance in submitting a Public Assistance and SNAP application, if one has

1043    not already been submitted, and if found eligible for SNAP benefits, the Class

1044    Member will receive those benefits from the date the Class Member submitted an

1045    application.

1046         82.    If an application for Public Assistance and SNAP has not been

1047    submitted on behalf of a Class Member before his or her Release Date, HRA Staff,

1048    upon the Class Member's first visit to a Job Center following his or her Release Date,

1049    or SPAN Office Staff, upon the Class Member's first visit to a SPAN Office

1050    following his or her Release Date, shall assist each such Class Member to secure

1051    necessary documentation for a Public Assistance and SNAP application and shall

- 39 -

**Exhibit A**

1052    complete and arrange to have submitted to HRA a Public Assistance and SNAP

1053    application for the Class Member.

1054         83.    For each Class Member who applies for Public Assistance and SNAP

1055    prior to or within 30 days after his or her Release Date, HRA (a) shall delay any

1056    requirement to participate in a BEV interview for six months and (b) shall refer the

1057    Class Member to WeCARE to undergo an evaluation.  Defendants shall ensure that

1058    the entire mental health evaluation at WeCARE, including evaluation by a

1059    psychiatrist sufficient to determine the impact of the Class Member's psychiatric

1060    condition on his or her ability to participate in work activities as further described in

1061    the New York Social Services Law § 336 and New York State Department of Social

1062    Services regulations ("work activities"), occurs on the Class Member's first visit to

1063    WeCARE.  Class Members exempted from or limited in their participation in work

1064    activities as a result of this evaluation shall not be required to attend any additional

1065    appointments at WeCARE during the time that such exemption or limitation is in

1066    effect, except that such Class Members shall be required to comply with non-work

1067    related appointments at WeCARE.  Class Members found at this examination to be

1068    partially or completely able to participate in work activities but who also wish to be

1069    evaluated for medical conditions or physical disabilities that potentially limit their

1070    ability to participate in work activities may be required to return to WeCARE for

1071    assessment of such medical conditions or disabilities.

1072         84.    Defendants' obligations related to SNAP benefits pursuant to this

1073    stipulation are subject to a waiver obtained by the New York State Office of

1074    Temporary and Disability Assistance (OTDA) from the U.S. Department of

1003086436v1

**Exhibit A**

1075    Agriculture that allows Discharge Planners to apply for SNAP benefits for Class

1076    Members while incarcerated.  Prior to the expiration of the waiver, Defendants shall

1077    use best efforts to have the waiver renewed, which requires further approvals from

1078    Federal and State officials.  Should the waiver expire, Defendants shall use best

1079    efforts to have the waiver reinstated, which similarly requires further approvals from

1080    Federal and State officials.  Defendants shall confer with the Compliance Monitors at

1081    least every six months regarding their efforts to implement or reinstate the waiver.

1082           85.     HRA staff, upon the Class Member's first visit to a Job Center

1083    following his or her Release Date, shall (a) assess the Class Member's need and

1084    eligibility for Emergency Benefits; (b) provide whatever Emergency Benefits the

1085    Class Member needs and is entitled to; and (c) if Emergency Benefits are not

1086    provided, document the reasons for the denial of Emergency Benefits.

1087           86.     [Removed]

1088           87.     Defendants shall assess Class Members' eligibility for SSI, SSD, other

1089    Social Security Benefits and Veterans Administration Benefits, and shall assist Class

1090    Members in obtaining such benefits.

1091           **5.**     **Housing**

1092           88.     As part of Discharge Planning, Defendants, prior to each Class

1093    Member's Release Date, shall assess each Class Member's need for appropriate

1094    housing following his or her release from incarceration and shall use their best efforts

1095    to ensure that each Class Member is placed in appropriate housing arrangements

1096    following his or her release from incarceration.

**Exhibit A**

1097                                    a.     ***Placement in Supportive Housing***

1098              89.      If Defendants determine that a Class Member will be in need of

1099    Supportive Housing following his or her release from incarceration, Discharge

1100    Planning Staff or SPAN Office Staff, as appropriate, shall complete an HRA 2010e

1101    Application on behalf of the Class Member and, upon approval of the HRA 2010e

1102    Application, shall cause the approved application and all other necessary documents

1103    to be submitted to appropriate housing providers and/or the SPOA Agency.

1104    Discharge Planning Staff or SPAN Office Staff, as appropriate, shall use best efforts

1105    to complete and submit the HRA 2010e Application and ensure that best efforts are

1106    used in attempting to obtain an appropriate housing placement for the Class Member

1107    prior to the Class Member's Release Date.

1108              90.      If a Class Member is determined to be in need of Supportive Housing

1109    but is released from incarceration in a City Jail before (a) the completion of his or her

1110    HRA 2010e Application; (b) HRA's approval of the Class Member's HRA 2010e

1111    Application; (c) the submission of the Class Member's approved HRA 2010e

1112    Application to housing providers and/or the SPOA Agency; or (d) acceptance of the

1113    Class Member by an appropriate housing provider, Discharge Planning Staff shall

1114    ensure that the individual who has primary responsibility for ongoing coordination of

1115    the Class Member's care following his or her Release Date receives all materials

1116    created or collected on behalf of the Class Member during his or her incarceration

1117    that can assist in the completion and submission of the HRA 2010e Application

1118    and/or that are necessary to secure appropriate housing for the Class Member.

- 42 -

**Exhibit A**

1119    91.    For purposes of the immediately preceding ¶ 90, the individual who

1120    has "primary responsibility for ongoing coordination of the Class Member's care" is,

1121    depending on the Class Member's circumstances, (a) a staff member at the

1122    community-based mental health care program to which the Class Member has been

1123    referred, (b) the Class Member's ICM, SCM, ACT or LINK worker, (c) SPAN Office

1124    Staff, provided the Class Member presents himself or herself to a DHS shelter or

1125    SPAN Office within thirty days after being released from incarceration at a City Jail,

1126    and/or (d) appropriate staff at a Program Shelter where the Class Member resides

1127    while awaiting a housing placement.  Defendants shall use best efforts to promptly

1128    determine the identity of this individual and record the name of this individual in the

1129    Class Member's Mental Health Record.  In the event that it is not feasible, despite

1130    Defendants' best efforts, to identify any such individual, Defendants shall record in

1131    the Class Member's Mental Health Record the name of the entity (identified from

1132    among the entities listed in this ¶ 91 of this Agreement) having "primary

1133    responsibility for ongoing coordination of the Class Member's care."

1134    92.    For a Class Member whose HRA 2010e Application has been

1135    submitted to a housing provider and/or to the SPOA Agency but who has not obtained

1136    a placement in a Supportive Housing program by his or her Release Date, Defendants

1137    shall promptly provide to housing providers and/or to the SPOA Agency any

1138    information in Defendants' possession requested to assist in the placement of the

1139    Class Member in appropriate housing.

- 43 -

**Exhibit A**

1140                 b.     ***Placement in DHS Shelters***

1141          93.      Plaintiffs acknowledge that homeless Class Members may be referred

1142 to the Shelter System administered by DHS for their temporary emergency shelter

1143 needs in situations where it has not been possible, despite Defendants' best efforts, to

1144 obtain a placement in Supportive Housing prior to the Class Member's Release Date.

1145          94.      In determining where to place a Class Member requiring shelter, upon

1146 Class Member consent to be requested by Discharge Planning Staff in completing the

1147 Class Member's Discharge Plan, DHS shall receive from Discharge Planning Staff

1148 and utilize all relevant and available information concerning the Class Member

1149 obtained during the Class Member's incarceration.  Such information shall be utilized

1150 in an effort to shorten or, wherever possible, eliminate the period of DHS Assessment

1151 generally required of individuals seeking placement in a DHS Shelter.

1152          95.      Discharge Planning Staff shall use their best efforts to provide DHS

1153 with the information described in ¶ 94 above prior to the Class Member's Release

1154 Date.  In circumstances where a Class Member who needs shelter is released from

1155 incarceration prior to this information being conveyed to DHS, Discharge Planning

1156 Staff or SPAN Office Staff, as applicable, shall provide such information to DHS

1157 promptly upon learning of the Class Member's release.  In addition, DHS staff shall

1158 use their best efforts to identify Class Members who appear at a DHS Shelter and

1159 contact Discharge Planning Staff to obtain information regarding those Class

1160 Members, if DHS does not already have the information described in ¶ 94 above for

1161 the particular Class Members in question.

- 44 -

# Exhibit A

1162       96.     DHS shall use best efforts to place a sentenced Class Member directly
1163 in a designated Program Shelter or Mental Health Program Shelter on his or her
1164 Release Date, provided that (a) DHS has determined that further assessment is not
1165 necessary after review of the information obtained by Defendants during the Class
1166 Member's incarceration, (b) a bed at such a shelter is available on the Class
1167 Member's Release Date, and (c) the Class Member arrives at the DHS Shelter on his
1168 or her Release Date prior to the facility's curfew hour, presently 10:00 p.m.
1169 Designated DHS staff shall monitor placement of Class Members not placed directly
1170 into a Program Shelter or Mental Health Program Shelter and will use best efforts to
1171 facilitate the placement of such Class Members in such shelters.  Class Members who
1172 are determined to be Seriously Mentally Ill shall be presumptively eligible for
1173 placement in a Program Shelter or Mental Health Program Shelter.

1174       97.     Plaintiffs understand that any Class Member who had not previously
1175 been enrolled in the DHS Shelter System will be required to first appear at a DHS I/A
1176 Shelter for adults prior to being placed directly in a designated Program Shelter or
1177 Mental Health Program Shelter in accordance with this § II.H.5.b.  For Class
1178 Members who are determined to be Seriously Mentally Ill and who have not
1179 previously been enrolled in the DHS Shelter System, Defendants shall provide
1180 transportation to an I/A Shelter and then to a Program Shelter in accordance with §
1181 II.H.6 below.

1182       98.     The obligations set forth in this § II.H.5.b shall not apply to any Class
1183 Member who seeks shelter from DHS more than thirty days after his or her Release
1184 Date.

- 45 -

**Exhibit A**

1185         99.     Nothing herein is intended to limit a Class Member's rights pursuant

1186  to the consent judgment in *Callahan v. Carey*, Index No. 42582/79 (Sup. Ct. N.Y. Co.

1187  Aug. 26, 1981) (Wallach, J.), or to limit a Class Member's entitlement to any Public

1188  Benefits and/or Emergency Benefits for which he or she may qualify under Social

1189  Services Law § 133 and the regulations and administrative directives of the New

1190  York Office of Temporary Disability Assistance.

1191               c.    ***Follow-up for Seriously Mentally Ill Class Members***

1192         100.    Defendants shall use best efforts to contact each Class Member who

1193  has been determined to be SMI within three days of his or her release from a City Jail

1194  to determine whether the Class Member's housing is clinically adequate and

1195  appropriate for his or her needs, and, if needed, shall offer to provide further

1196  assistance in securing appropriate housing; provided, however, that if the Class

1197  Member has been accepted as a client of a LINK program, the LINK program shall

1198  perform such follow up and assistance within five days.

1199          **6.**    **Transportation**

1200         101.    Defendants shall provide each Class Member released from

1201  incarceration in a City Jail, except Class Members released from incarceration on bail

1202  or pursuant to other court orders requiring that they be released immediately, and who

1203  Defendants have determined to be Seriously Mentally Ill, with transportation from the

1204  City Jail (a) to the Class Member's residence in the community or (b) to a temporary

1205  emergency shelter or I/A Shelter and then to the DHS Shelter in which the Class

1206  Member is placed.

1207        102.    Defendants shall provide each Class Member who is released from

1208   court and who Defendants have determined to be Seriously Mentally Ill with

1209   transportation from the SPAN Office (a) to the Class Member's residence in the

1210   community, or (b) to a temporary emergency shelter or I/A Shelter and then to the

1211   DHS Shelter in which the Class Member is placed.

1212        103.    The obligations set forth in this § II.H.6 shall apply only if the Class

1213   Member wishes to accept the transportation services offered.

1214      **I.**      **Class Members Who Appear at a SPAN Office**
1215            **More than Thirty Days After Their Release Date**

1216        104.    For each Class Member who presents himself or herself at a SPAN

1217   Office more than thirty days after his or her Release Date, SPAN Office Staff shall

1218   make reasonable efforts to make an appointment with community agencies or

1219   organizations for further assistance as appropriate.

1220   **III.**     **SETTLEMENT IMPLEMENTATION**

1221        105.    Defendants shall complete the implementation of all aspects of this

1222   Settlement Agreement no later than the Implementation Date, which shall be the date

1223   60 days after the date on which the Court enters a Final Order and Judgment, as

1224   provided in § VIII below.

1225        106.    If any of the systems to provide Discharge Planning as contemplated

1226   by this Agreement is not in place by the Implementation Date, Defendants shall, by

1227   that date, provide Class Counsel with a written report describing all services and/or

1228   systems that are not yet available, the reason they are not yet available, and the date

1229   on which they are expected to become available. The report provided by Defendants

- 47 -

1230    in accordance with this ¶ 106, if any, shall not constitute compliance with the terms of

1231    the Settlement Agreement, nor shall the receipt or non-receipt of such report preclude

1232    Plaintiffs and Class Counsel from taking any steps necessary to enforce the provisions

1233    of this Agreement.

1234         107.    Defendants shall, no later than the Implementation Date, adopt all

1235    manuals, policy and procedure documents, directives, training materials, and other

1236    similar documents required to implement this Settlement Agreement.  Defendants

1237    shall provide Class Counsel with an opportunity to review and comment on such

1238    documents in accordance with ¶ 128 hereof.  To the extent that Defendants have

1239    adopted any such documents before the Execution Date, Defendants shall provide

1240    copies of such documents to Class Counsel within five days of the Execution Date

1241    and shall provide Class Counsel with an opportunity to review and comment on such

1242    documents in accordance with ¶ 128 hereof.

1243    **IV.**    **MONITORING**

1244         **A.**    <u>**Selection and Appointment of Compliance Monitors**</u>

1245         108.    Subject to the provisions of this Section IV, Class Counsel and

1246    Defendants' Counsel shall each designate one of two Compliance Monitors.  Class

1247    Counsel and Defendants' Counsel shall then jointly move the Court for an Order

1248    appointing those Compliance Monitors and providing them with the authority,

1249    consistent with the terms of this Agreement, to monitor the provision of Discharge

1250    Planning in City Jails and Defendants' compliance with the terms of this Agreement.

1251    In the event of (a) the death, resignation, or unforeseen permanent or temporary

1252    unavailability of either Compliance Monitor, or (b) the Court's refusal to appoint

- 48 -

**Exhibit A**

1253    either Compliance Monitor, the Counsel who designated that Compliance Monitor

1254    may designate a replacement, who shall also then be appointed by the Court in

1255    accordance with the procedures set forth in this Section IV.

1256    109.    Each Compliance Monitor shall be either (a) a licensed and board

1257    certified physician who has been so licensed and certified for at least five years

1258    immediately preceding the date of his or her appointment and has at least five years'

1259    experience providing, evaluating, or consulting with respect to mental health care for

1260    people with serious mental illness or (b) a social worker who has a Masters degree in

1261    social work, has at least three years of mental health discharge planning experience

1262    and has at least two years of managerial or supervisory experience.

1263    110.    Except with the consent of Class Counsel, no person who presently

1264    has, or has within the past five years had, a business relationship with any Defendant

1265    or with any medical or mental health care provider under contract with any Defendant

1266    may act as a Compliance Monitor.

1267    111.    Except with the consent of Defendants' Counsel, no person who

1268    presently has, or has within the past five years had, a business relationship with

1269    Debevoise & Plimpton, the Urban Justice Center or New York Lawyers for the Public

1270    Interest, Inc. may act as a Compliance Monitor.

1271    112.    The Parties shall endeavor in good faith to agree on the identity of the

1272    Compliance Monitors and to designate Compliance Monitors who are mutually

1273    acceptable to one another.  If, however, any Party objects to the Compliance Monitor

1274    designated by another Party and the non-objecting Party refuses to designate an

1275    alternate Compliance Monitor, the objecting Party may apply to the Court to prevent

**Exhibit A**

1276    the appointment of the Compliance Monitor based on any of the grounds set forth in

1277    ¶114 below.

1278        113.    Class Counsel and Defendants' Counsel shall move the Court for an

1279    Order appointing the Compliance Monitors so that they can begin the performance of

1280    their duties pursuant to this Settlement Agreement no later than the Implementation

1281    Date.

1282        114.    Any Party may apply to the Court for the removal of either

1283    Compliance Monitor at any time.  Such removal shall require a showing by

1284    persuasive evidence of (a) corruption, nonfeasance or bias by the Compliance

1285    Monitor; (b) failure to meet the qualifications set forth in ¶¶ 109 - 111 above; or (c) a

1286    failure to perform his or her duties pursuant to this Agreement.  If the Court finds that

1287    the Compliance Monitor should be removed, the Party who designated that

1288    Compliance Monitor shall designate a replacement in accordance with the

1289    requirements of ¶¶ 109 - 111 above, who shall then be appointed by the Court in

1290    accordance with the procedures set forth in this § IV.

1291        **B.    <u>Costs of Monitoring</u>**

1292        115.    Defendants shall pay the Compliance Monitors and any staff or

1293    employees deemed reasonably necessary by the Compliance Monitors at rates to be

1294    agreed upon by the Compliance Monitors and the Parties.  Such rates shall take into

1295    consideration each Compliance Monitor's usual and customary rate and the City's

1296    usual and customary contracting practices.  Defendants shall also reimburse the

1297    Compliance Monitors for any costs and expenses reasonably incurred in the

1298    performance of their duties pursuant to this Settlement Agreement.

**Exhibit A**

1299        116.    The Parties and each Compliance Monitor shall endeavor in good faith

1300  to resolve any dispute regarding the hourly rate to be paid each Compliance Monitor

1301  or the reasonableness of any fees, costs or expenses incurred by either Compliance

1302  Monitor.  Failing such resolution, the Parties shall refer the dispute to the Court for

1303  resolution.

1304        117.    Defendants shall provide the Compliance Monitors with any

1305  equipment that the Compliance Monitors deem reasonably necessary to perform their

1306  duties.  Each Compliance Monitor shall return such equipment to Defendants at the

1307  conclusion of his or her duties pursuant to this Agreement.

1308        **C.**    **Scope and Method of Monitoring**

1309        118.    The Compliance Monitors and any staff or employees working at their

1310  direction shall have reasonable access to people, places and things relevant to the

1311  provision of Discharge Planning pursuant to this Agreement, as set forth in greater

1312  detail below.  The principal means of monitoring shall be access to documents and

1313  records, including those stored electronically; access to Class Members; and

1314  observation of training sessions; provided, however, the Compliance Monitors shall

1315  also have access to facilities and staff described below as the Compliance Monitors

1316  deem reasonably necessary to determine whether Defendants are complying with the

1317  terms of this Settlement Agreement.

1318        119.    Either Party may contest any action taken or proposed by the

1319  Compliance Monitors pursuant to § IV of this Agreement as being beyond the scope

1320  of their authority under this Agreement, or as being unreasonable.  Such challenges

1321  shall be raised by the contesting Party promptly after such action is taken or

1322  proposed, and the Parties shall confer in good faith to resolve such disputes.  Failing

1323  such resolution, the contesting Party may seek an order from the Court enjoining,

1324  prohibiting or limiting such action, and the contesting Party shall bear the burden of

1325  production and persuasion on its motion.

1326  **1.    Access to Records**

1327  120.    The Compliance Monitors shall have access to all documents and

1328  information, including records stored electronically, maintained by Defendants and/or

1329  their agents or contractors that are reasonably necessary, in the judgment of the

1330  Compliance Monitors, to determine whether Defendants are complying with the

1331  terms of this Settlement Agreement.  The documents and information to which the

1332  Compliance Monitors shall have access pursuant to this § IV.C.1 shall include, but

1333  are not limited to, (a) all records generated by Defendants and their contractors in the

1334  course of providing Discharge Planning for Class Members, and (b) Class Members'

1335  Mental Health Records and medical records related to mental health treatment in the

1336  possession of Defendants and their contractors.

1337  121.    Defendants shall, if feasible, provide records requested by the

1338  Compliance Monitors pursuant to ¶ 120 above to the Compliance Monitors within

1339  five business days of each such request; provided, however, that Defendants shall

1340  respond to any request by the Compliance Monitors for records regarding the

1341  provision of Discharge Planning to any individual Class Member within 48 hours.

1342  122.    The Compliance Monitors shall also be entitled to request and receive

1343  samples of the Mental Health Records and medical records related to mental health

1344  treatment of Class Members having certain characteristics or receiving certain

- 52 -

1345     services; provided, however, that the Compliance Monitors shall request only those

1346     record samples that they deem reasonably necessary to monitor Defendants'

1347     compliance with this Agreement.  Defendants may object to any request for a

1348     particular sample in accordance with this ¶ 122 on the grounds that the compilation of

1349     the sample would be unduly burdensome.  The Parties shall endeavor in good faith to

1350     resolve any such objections.  Failing such resolution, the Parties reserve the right to

1351     seek a ruling from the Court as to such objections.

1352           **2.**      **Access to Computer Systems**

1353         123.     Defendants shall provide the Compliance Monitors and such other

1354     staff or employees as the Compliance Monitors may designate (a) with read-only

1355     access to the Discharge Planning MIS and DHS Database, and (b) to such information

1356     pertaining to Class Members derived from the IIS, the DHS Database, WMS and

1357     other HRA computer systems as may be necessary to monitor Defendants'

1358     compliance with this Agreement.

1359         124.     The Compliance Monitors shall develop a form of report to be run

1360     from the Discharge Planning MIS and the DHS Database and provided by Defendants

1361     to the Compliance Monitors on a monthly basis sufficient to assist the Compliance

1362     Monitors in monitoring Defendants' compliance with their obligations under this

1363     Agreement.  Defendants further agree promptly to provide the Compliance Monitors

1364     with any other reports requested by the Compliance Monitors that can be generated

1365     by the Discharge Planning MIS and DHS Database, and, if necessary to monitor

1366     Defendants' compliance with this Agreement, other computer systems enumerated in

1367 ¶ 123 above, if Defendants can do so without any modification of the software or

1368 hardware used to operate such systems.

1369      125.    The Discharge Planning MIS will contain the data fields listed in

1370 Exhibit A. Defendants agree to update the Discharge Planning MIS as necessary, in a

1371 timely manner, so that it accurately reflects current information for each Class

1372 Member.

1373      126.    The Parties acknowledge that it may be appropriate for the

1374 configuration of the Discharge Planning MIS to change during the course of

1375 implementation of this Settlement Agreement. The Compliance Monitors may

1376 therefore request that Defendants add, delete or modify data fields or other aspects of

1377 the Discharge Planning MIS as necessary to monitor Defendants' compliance with

1378 this Agreement. Defendants shall, if feasible, implement such requests or provide the

1379 Compliance Monitors with an explanation of why such requests are not implemented.

1380      **3.**     **Access to Manuals**

1381      127.    Until the monitoring period is terminated pursuant to § XIV,

1382 Defendants shall provide the Compliance Monitors with at least 14 days to review

1383 and comment on (a) all new manuals, policy and procedure documents, directives,

1384 training materials, and other similar documents, regardless of name, that concern the

1385 provision of Discharge Planning to Class Members; and (b) all draft revisions to and

1386 proposed revocations of any existing manuals, policy and procedure documents,

1387 directives, training materials, and other similar documents, regardless of name, that

1388 concern the provision of Discharge Planning to Class Members, before such

1389 documents, revisions or revocations are finalized and regardless of whether those

1003086436v1

1390    documents are generated by Defendants or a contractor to Defendants. Defendants

1391    shall provide the Compliance Monitors with finalized versions of all such documents,

1392    revisions, and revocations within seven days after each of them is finalized. All such

1393    materials in existence on the date on which the Compliance Monitors are appointed

1394    by the Court shall be provided to the Compliance Monitors by Defendants within

1395    seven days of the date of the Order appointing the Compliance Monitors.

1396    128.   Until appointment of the Compliance Monitors as provided in § IV.A

1397    above, Defendants shall provide the materials described in ¶ 127 above to Class

1398    Counsel for their review and comment at least 14 days before such materials are

1399    finalized.

1400    129.   Defendants shall not be required to accept any recommendation of the

1401    Compliance Monitors or Class Counsel pursuant to ¶ 107 and ¶¶ 127 - 128 above;

1402    provided, however, that Defendants shall notify the Compliance Monitors and Class

1403    Counsel if Defendants reject any such recommendation within seven days after such

1404    recommendation was received by Defendants.

1405    **4.   Access to Class Members**

1406    130.   The Compliance Monitors may, with Class Members' consent,

1407    conduct interviews with incarcerated Class Members or groups of Class Members in

1408    the same degree of auditory privacy afforded inmates when meeting with their

1409    attorneys and in a manner consistent with reasonable DOC security concerns and the

1410    reasonable operational concerns of CHS and its medical care vendor. Defendants

1411    shall allow such interviews to take place in all facilities where Discharge Planning

1003086436v1

**Exhibit A**

| | |
|---|---|
| 1412 | occurs in City Jails or where Class Members receive Discharge Planning, including |
| 1413 | the Jail Treatment Locations. |
| 1414 | **5.    Access to Training** |
| 1415 | 131.    Defendants shall provide the Compliance Monitors with reasonable |
| 1416 | advance notice of training sessions for Defendants' employees and all other |
| 1417 | individuals involved in providing the Discharge Planning contemplated by this |
| 1418 | Agreement.  The Compliance Monitors may observe all such sessions and provide |
| 1419 | comments and recommendations. |
| 1420 | **6.    Access to Areas where Discharge Planning is Performed** |
| 1421 | 132.    Defendants shall ensure that the Compliance Monitors have physical |
| 1422 | access to all Jail Treatment Locations and all Discharge Planning Facilities, including |
| 1423 | the Community Referral Unit, Benefits Unit, and SPAN Offices.  Such access shall be |
| 1424 | arranged through Defendants' Counsel on reasonable advance notice and, unless |
| 1425 | otherwise arranged, shall occur between 9:00 a.m. and 5:00 p.m. |
| 1426 | 133.    The Compliance Monitors shall be allowed to conduct interviews with |
| 1427 | Class Members during visits to the areas and offices described in ¶ 132 above, subject |
| 1428 | to Class Members' consent and the facilities' space availability and normal |
| 1429 | operations. |
| 1430 | 134.    Subject to ¶ 118, the Compliance Monitors' access to any location in a |
| 1431 | City Jail may be limited only due to Defendants' reasonable security or operational |
| 1432 | concerns. |

**Exhibit A**

1433            **7.**      **Access to Staff**

1434       135.      The Compliance Monitors may conduct interviews with employees of

1435    CHS and its medical care vendor and SPAN Office Staff and any other employees

1436    who are otherwise providing services or benefits to Class Members in Discharge

1437    Planning Facilities. The Compliance Monitors may also conduct interviews with

1438    employees of other Defendant Agencies, including but not limited to DOC, DHMH,

1439    HRA, any Job Center operated by HRA, DHS, WeCARE, LINK, the transportation

1440    vendor engaged to provide services pursuant to this Agreement, and employees of

1441    sub-contractors of these entities, provided the Compliance Monitors articulate a

1442    reason why such interviews are reasonably necessary to determine whether

1443    Defendants are complying with the terms of this Settlement Agreement. Defendants

1444    and Defendants' Counsel hereby specifically authorize the Compliance Monitors to

1445    conduct such interviews.

1446       136.      The Compliance Monitors shall arrange interviews described in ¶ 135

1447    above through Defendants' Counsel and shall provide reasonable advance notice of

1448    all interviews. Defendants' Counsel will promptly arrange and facilitate all such

1449    interviews, at the location of the employee's choosing.

1450       137.      Defendants shall use best efforts, consistent with the City's

1451    employment obligations, to ensure that the persons and entities identified in ¶ 135

1452    above cooperate with the Compliance Monitors and respond directly and promptly to

1453    all oral or written inquiries and/or requests related to the monitoring of Defendants'

1454    compliance with this Settlement Agreement.

1003086436v1

**Exhibit A**

1455        138.    The Compliance Monitors agree to maintain the confidentiality of the

1456    identity of each person interviewed pursuant to this § IV.C.7 unless (a) the person

1457    interviewed consents to having his or her identity revealed or (b) revealing the

1458    identity of the person interviewed to Class Counsel, Defendants' Counsel and/or the

1459    Court is necessary to enforce the terms of this Settlement Agreement.  Any person's

1460    identity revealed to the Court pursuant to subparagraph 138 (b) above shall be

1461    revealed only in a document filed with the Court under seal.

1462        139.    The Compliance Monitors shall be allowed to request to meet with

1463    Defendants, representatives of Defendants' contractors, Defendants' counsel and/or

1464    Class Counsel to discuss any aspect of this Agreement.  Defendants' Counsel shall

1465    promptly arrange and facilitate any such meetings.

1466    **D.    <u>Development of Performance Goals</u>**

1467        140.    Within six months after the Implementation Date, the Compliance

1468    Monitors, based on their experience in the implementation of the Settlement

1469    Agreement, shall establish performance goals designed to measure Defendants'

1470    compliance with this Settlement Agreement.  These performance goals shall, in the

1471    judgment of the Compliance Monitors, reflect any practical limitations on providing

1472    Discharge Planning and implementing Discharge Plans in the City Jails.

1473        141.    Each of these performance goals shall be expressed in terms of a

1474    percentage of eligible Class Members or individuals for whom each goal shall be

1475    achieved.  For example, if the Compliance Monitors set a performance goal providing

1476    that 90% of Class Members for whom Pre-Screening is required shall be prescreened

1477    for Medicaid eligibility prior to their release from incarceration, then, Defendants

- 58 -

1478   must be prescreening 90% of such Class Members for Medicaid eligibility before

1479   they are released from incarceration.

1480       142.    The performance goals shall be established and shall measure

1481   performance in the following categories:

1482               a.    Timely assessment of Class Members for inclusion in
1483                     the Class;

1484               b.    Appropriate assessment of whether Class Members are
1485                     Seriously Mentally Ill;

1486               c.    [Removed];

1487               d.    Completion of clinically appropriate Comprehensive
1488                     Treatment Plans for Class Members;

1489               d.1.  Completion of clinically appropriate Discharge Plans
1490                     for Class Members;

1491               e.    Completion and processing of Medicaid prescreening
1492                     for Class Members;

1493               f.    Enrollment of eligible Class Members in MGP and
1494                     submission of Medicaid applications;

1495               g.    Activation of Class Members' Medicaid benefits;

1496               h.    Provision of medications and/or e-prescriptions to Class
1497                     Members;

1498               i.    Making appropriate community referrals and/or
1499                     appointments for Class Members;

1500               j.    Submission and processing of Public Assistance and
1501                     SNAP applications for potentially eligible Class
1502                     Members who are deemed to be SMI;

1503               k.    Provision of transportation to Class Members who are
1504                     deemed to be SMI;

1505               l.    Follow-up with Class Members who are deemed to be
1506                     SMI in the areas of housing placement and community
1507                     referrals or appointments; and

- 59 -

**Exhibit A**

1508    m.    Arranging appropriate housing placements for eligible
1509          Class Members.

1510    143.    The Parties acknowledge that a range of accepted clinical standards

1511 and practices may inform a clinician's judgment concerning what constitutes

1512 appropriate mental health treatment.  The Compliance Monitors shall assess

1513 Defendants' compliance with the performance goals set pursuant to subparagraphs

1514 142 (b), (d), (d.1), (i) and (m) above in light of this range of accepted clinical

1515 standards and practices.

1516    144.    The Compliance Monitors may establish performance goals in such

1517 other areas as necessary to effectuate the terms of this Agreement.

1518    145.    If Defendants fail to meet the performance goals established by the

1519 Compliance Monitors within six months after they are established by the Compliance

1520 Monitors, Class Counsel shall have the right to apply to the Court for an order

1521 requiring Defendants to comply with the performance goals.

1522    146.    The performance goals are to be re-evaluated annually until the end of

1523 the monitoring period by the Compliance Monitors in light of their experience

1524 concerning the implementation of the Settlement Agreement and discussions with the

1525 Parties.  The first re-evaluation of the performance goals shall occur one year after the

1526 date on which such goals are first established.

1527    146.1.  Within two months after the effective date of any revisions to the

1528 Stipulation of Settlement, the Compliance Monitors shall re-assess, and where

1529 necessary establish, performance goals in light thereof and discussions with the

1530 Parties.

**Exhibit A**

1531      147.    The Compliance Monitors shall be the final arbiters of the

1532   performance goals set pursuant to this § IV.D; provided, however, that the

1533   Compliance Monitors shall consult with the Parties in setting such performance goals.

1534      **E.**     **Reporting By Compliance Monitors**

1535      148.    The Compliance Monitors shall make such recommendations to the

1536   Parties through counsel as may be appropriate to ensure compliance with the

1537   Settlement Agreement and may perform such additional consultative tasks or make

1538   such other recommendations as Class Counsel and Defendants' Counsel jointly may

1539   request.

1540      149.    The Compliance Monitors shall submit written reports to the Court and

1541   to the Parties every 90 days during the first year after the Implementation Date and

1542   thereafter every 120 days.  The reports:

1543              a.     shall assess the current state of compliance with the
1544                          Settlement Agreement and performance goals set in
1545                          accordance with § IV.D above, including whether
1546                          progress has been made and whether compliance has
1547                          been maintained for a substantial period of time;

1548              b.     shall analyze and review the cases of Class Members
1549                          who did not receive clinically appropriate Discharge
1550                          Planning in accordance with this Settlement Agreement
1551                          (selection of any individual cases for review in a report
1552                          pursuant to this subparagraph 149(b) shall be at the sole
1553                          discretion of the Compliance Monitors);

1554              c.     shall analyze and discuss any impediments to meeting
1555                          the performance goals set in accordance with § IV.D of
1556                          this Agreement and make recommendations for
1557                          overcoming those impediments;

1558              d.     may make recommendations for changes in policies and
1559                          procedures or any other matter relating to Discharge
1560                          Planning as contemplated by this Agreement; and

1003086436v1

**Exhibit A**

1561     e.  may report on any other matters that affect the rights of
1562         Class Members, or any of them, pursuant to this
1563         Settlement Agreement.

1564    150.  The Compliance Monitors may periodically review the medical and/or

1565 Mental Health Records of non-Class Members to determine whether inmates are

1566 timely, adequately and accurately assessed for membership in the Class and report

1567 their conclusions to Defendants' Counsel and Class Counsel.  Such review may be

1568 conducted by sampling of records or any other reasonable and adequate method, and

1569 appropriate precautions shall be taken to maintain the confidentiality of names of

1570 non-Class Members whose records are reviewed.

1571    151.  Nothing in the preceding ¶¶ 148 - 150 shall prevent either Compliance

1572 Monitor from presenting interim reports, either written or oral, to address any issues

1573 identified by the Compliance Monitor or in response to a reasonable request for an

1574 update from either Class Counsel or Defendants' Counsel.  If the Compliance

1575 Monitors identify a significant deficiency in Defendants' compliance with the

1576 Agreement, the Compliance Monitors shall inform Class Counsel and Defendants'

1577 Counsel as soon as practicable after the discovery of any such deficiency.

1578    **F.**  **Monitoring by Class Counsel**

1579    152.  Monitoring by Class Counsel as described in § IV of this Agreement

1580 shall begin no later than the Implementation Date and shall continue until the

1581 monitoring provisions of this Agreement are terminated.

1582    153.  Class Counsel and Defendants' Counsel shall meet at least every 90

1583 days during the first year after the Implementation Date, beginning with a meeting

1584 that shall occur within ten days of the issuance of the Compliance Monitors' first

1003086436v1

**Exhibit A**

1585 report to the Court and the Parties pursuant to ¶ 149 above, and thereafter within 45

1586 days of the issuance of each report, to discuss issues arising under this Settlement

1587 Agreement.  At the request of Class Counsel, Defendants' Counsel also shall, if

1588 feasible, arrange for the attendance at such meetings by any officials of Defendants or

1589 representatives of any contractor employed by Defendants to carry out any of their

1590 obligations under this Agreement.

1591   154. To facilitate monitoring of Defendants' compliance with the terms of

1592 the Settlement Agreement:

1593      a. Class Counsel shall be permitted to confer
1594        confidentially with any Class Member or group of up to
1595        three Class Members incarcerated in City Jails in a
1596        manner consistent with reasonable DOC security and
1597        operational concerns.  DOC shall take steps to facilitate
1598        communication between Class Counsel and
1599        incarcerated Class Members, including but not limited
1600        to scheduling in-person meetings at City Jails.  To
1601        facilitate in-person meetings, Defendants shall provide
1602        Class Counsel with a list of all Class Members, sorted
1603        by facility in which the Class Member is housed, every
1604        other week during which the monitoring provisions of
1605        this § IV.F are in force.  On forty-eight hours' notice,
1606        DOC shall produce Class Members designated by Class
1607        Counsel for meetings at the DOC facility in which the
1608        Class Member is housed.  DOC shall ensure that,
1609        consistent with reasonable DOC security and
1610        operational concerns, Class Counsel shall have the
1611        opportunity to meet with a minimum of 20 Class
1612        Members, subject to the Class Members' consent and
1613        availability, during any monitoring visit scheduled
1614        pursuant to this subparagraph 154(a).

1615      b. Class Counsel shall have access to all documents and
1616        information provided to the Compliance Monitors
1617        pursuant to this Agreement.

1003086436v1

**Exhibit A**

1618      155.    Nothing in this § IV.F shall limit Class Counsel's access to any
1619   materials or information obtainable through discovery in a Court proceeding brought
1620   to enforce the terms of this Agreement or through a Freedom of Information Law
1621   request.

1622      156.    Defendants shall pay the reasonable attorneys' fees and expenses of
1623   Class Counsel incurred in monitoring Defendants' compliance with this Agreement;
1624   provided, however, that such fees and expenses shall not exceed $200,000 in the first
1625   year after the Implementation Date, $150,000 in the second year thereafter, and
1626   $75,000 in the third year thereafter.  In the fourth and fifth years after the
1627   Implementation Date, Class Counsel shall be entitled to such reasonable fees and
1628   expenses as are incurred in performing tasks contemplated by this Agreement or
1629   performed at the request of the Compliance Monitors.  Class Counsel shall document
1630   their requests for payment of fees and expenses in monitoring Defendants'
1631   compliance, and shall use reasonable hourly rates in computing the total fees for
1632   which they seek payment.  Beginning September 1, 2017, any request for fees and/or
1633   expenses accrued between June 3 of the prior year and June 2 of that calendar year
1634   shall be made by September 1 of that year.  Any disputes as to the amount of
1635   attorneys' fees and expenses to be paid to Class Counsel pursuant to this ¶ 156 shall
1636   be referred to the Court for resolution.

1637      G.    **Confidentiality**

1638      157.    Subject to ¶ 158 below, Defendants agree not to redact or assert any
1639   need or obligation to redact material related to individual Class Members or in any

- 64 -

**Exhibit A**

1640  way prevent or attempt to prevent the Compliance Monitors or Class Counsel from

1641  identifying or gaining access to material identifying individual Class Members.

1642     158.   Class Counsel and Defendants' Counsel agree to confer in good faith

1643  to resolve any disputes that may arise regarding whether any federal, state, or City

1644  law or court order limits and/or prohibits the disclosure of confidential information

1645  related to any individual inmate.  Failing such resolution, Defendants may apply to

1646  the Court for an order to prevent the disclosure of such information.

1647     159.   The Compliance Monitors and their staff and Class Counsel shall

1648  maintain the confidentiality of all information regarding Class Members as required

1649  by applicable statutes, regulations, and professional standards of conduct.  The

1650  Compliance Monitors (and any staff to be granted access to information concerning

1651  individual Class Members) shall sign appropriate undertakings, substantially in the

1652  form of Exhibit E, before being granted access to such information.  Nothing in this

1653  ¶ 159 or the undertaking shall prevent the Compliance Monitors from sharing with

1654  Class Counsel any information they obtain pursuant to this Agreement.

1655  **V.     ENFORCEMENT**

1656     **A.     <u>Compliance</u>**

1657     160.   Defendants and their contractors shall be in substantial compliance

1658  with the terms of this Settlement Agreement at all times after the Implementation

1659  Date.

1660     161.   Subject to ¶ 145 above, Class Counsel reserve their right to apply to

1661  the Court at any time for an order enforcing the provisions of this Agreement.

- 65 -

1662        162.    Defendants acknowledge that individuals assessed at the Initial

1663    Assessment as needing further mental health assessment and/or treatment have

1664    enforceable rights pursuant to this Agreement, and Defendants agree not to object to

1665    an enforcement proceeding brought to enforce such rights by such individuals based

1666    on lack of standing.

1667        **B.**    <u>**Cure**</u>

1668        163.    Except in emergency situations, Class Counsel shall, before applying

1669    to the Court for an order enforcing any provision of this Settlement Agreement,

1670    provide Defendants' Counsel with notice of their intention to do so, and shall provide

1671    Defendants' Counsel with a reasonable opportunity to address or remedy the matter

1672    of concern.  The reasonableness of the notice shall be a matter for Class Counsel's

1673    discretion but shall be no less than 20 days; Class Counsel shall take into account the

1674    nature of the matter of concern and the extent to which it affects the provision of

1675    Discharge Planning to the Class or an individual Class Member in calculating what

1676    amount of time is reasonable.

1677        164.    In emergency situations, Class Counsel shall contact Defendants'

1678    Counsel and advise Defendants' Counsel of the nature of the situation and proposed

1679    steps to be taken that could alleviate the perceived risk or deficiency.  Following this

1680    contact, Class Counsel may then initiate whatever legal proceedings they believe to

1681    be necessary to alleviate the emergency situation.

1682        165.    In the event that Class Counsel apply to the Court for the enforcement

1683    of this Settlement Agreement, Class Counsel and Defendants agree to redact any

1684    submission to the Court to exclude the names of Class Members and any identifying

- 66 -

1685    information relating to Class Members unless such identifying information is

1686    necessary to adjudication of the dispute.  If such identifying information is necessary

1687    to adjudication of the dispute, a Party (a) may disclose such information to the Court

1688    and (b) shall file such information under seal.

1689    **C.    Cost of Enforcement**

1690        166.    Defendants will be liable for Class Counsel's reasonable attorneys'

1691    fees and expenses, including but not limited to the reasonable expenses of employing

1692    experts, that are properly incurred in enforcing the terms and provisions of this

1693    Agreement through the Court if Class Counsel are successful or if Plaintiffs and

1694    Defendants settle the dispute that forms the basis of the proceeding to enforce the

1695    Agreement.

1696        167.    Disputes between the Parties about the amount of attorneys' fees and

1697    expenses to be reimbursed in accordance with this § V.C shall be resolved by the

1698    Court.

1699    **D.    Protection of Individual Class**
1700            **Members Pending Settlement Approval**

1701        168.    Between the Execution Date and the Implementation Date, Class

1702    Counsel may provide Defendants with the names of individual Class Members who

1703    (a) are incarcerated or were released within the preceding 30 days; (b) have requested

1704    Discharge Planning services; and (c) have not received such services.  Defendants

1705    shall ensure that such Class Members receive services to which they would be

1706    entitled pursuant to the preliminary injunction order entered by the Court on July 9,

1707    2000, as is necessary to prevent irreparable harm.  Should Defendants fail to provide

- 67 -

1708    any such Class Member with such services between the Execution Date and the

1709    Implementation Date, Class Counsel may move on such notice as the Court may

1710    direct for all appropriate relief with respect to such Class Member, independent of

1711    whether the Final Order and Judgment is entered by the Court.  Upon the Execution

1712    of this Settlement Agreement, the Parties shall submit to the Court a separate

1713    proposed Order embodying the terms of this provision substantially in the form of

1714    Exhibit F for the Court's immediate approval.

1715    **VI.    CONTRACTORS**

1716            169.    Defendants acknowledge that the obligations of all agencies,

1717    contractors and assignees set forth in this Settlement Agreement are ultimately the

1718    obligations of the Defendants.  Defendants shall not assert that they are not

1719    responsible for noncompliance with any term or provision of this Settlement

1720    Agreement by reason of the fact that an agency, contractor or assignee has been

1721    charged with performance of any such term or provision of this Agreement.

1722            170.    In the event that Defendants enter into or renew a contract with any

1723    individual or entity to perform any of Defendants' obligations set forth in this

1724    Settlement Agreement, Defendants shall ensure that such contract(s) incorporates the

1725    terms and provisions of the Settlement Agreement that relate to the services that the

1726    contractor will provide.

1727    **VII.    EDUCATION OF THE COMMUNITY**

1728            171.    Defendants, in consultation with Class Counsel, (a) shall conduct

1729    informational sessions designed to educate members of the New York City mental

1730    health care community and the criminal justice system about the Settlement and the

1003086436v1

**Exhibit A**

1731    contributions that they can make to the successful implementation of the Discharge

1732    Planning systems described in this Agreement, (b) shall develop written materials

1733    designed to educate members of the New York City mental health care and criminal

1734    justice community concerning the Settlement and Discharge Planning systems

1735    described in this Agreement, and (c) shall distribute such written materials to

1736    members of the New York City mental health care community and the criminal

1737    justice system at the informational sessions contemplated by § VII of this Agreement,

1738    and through other appropriate means to be determined (which shall include, but are

1739    not limited to, distribution through organizations such as the Legal Aid Society and

1740    through a direct mail campaign).

1741        172.    The members of the New York City mental health care community

1742    and criminal justice system who shall be targeted by the educational efforts

1743    contemplated by the immediately preceding ¶ 171 include, but are not limited to,

1744    defense attorneys (for example, 18B and Legal Aid/Defenders Services), judges,

1745    prosecutors, probation officers, corrections officers, court officers, peer advocacy

1746    organizations, community mental health workers, and family support groups.

1747        173.    The community education efforts contemplated by this § VII shall be

1748    commenced within 30 days after the entry of the Final Order and Judgment and

1749    completed within 180 days after the entry of the Final Order and Judgment.

1750        174.    Defendants shall bear all costs incurred in implementing the

1751    community education efforts contemplated by this § VII, including but not limited to

1752    the costs of printing and distributing any written material.

- 69 -

**Exhibit A**

1753 **VIII.   ORDER OF NOTICE, HEARING AND APPROVAL**

1754       175.   No later than 10 days after the Execution Date, the Parties will submit

1755 this Agreement, including all Exhibits attached hereto, to the Court and seek from the

1756 Court a Hearing Order that is substantially in the form attached as Exhibit C hereto.

1757 The Hearing Order proposed by the Parties shall schedule the Fairness Hearing on the

1758 date that is 70 days after the Court's entry of the Hearing Order.

1759       176.   The Parties agree that prior to submission of the Agreement to the

1760 Court and application for the Hearing Order as contemplated by ¶ 175, above, they

1761 will together negotiate and draft the form of the Class Notice, Summary Notice and

1762 Comment Sheet, which documents shall be attached as exhibits to the proposed

1763 Hearing Order.

1764       177.   The Notice Materials shall conform to all applicable requirements of

1765 Article 9 of the New York Civil Practice Law and Rules ("CPLR"), the Constitution

1766 of the State of New York (including but not limited to its Due Process Clause), the

1767 Rules of Court and any other applicable law, and shall otherwise be in the manner and

1768 form agreed upon by the Parties and approved by the Court.

1769       178.   Subject to the requirements of the Hearing Order and no later than 60

1770 days before the Fairness Hearing, Defendants will post copies of the Class Notice, the

1771 Summary Notice (in English and Spanish) and the Comment Sheet in each SPAN

1772 Office and in the following areas of each City Jail:  each mental health and medical

1773 clinic, each punitive segregation area, each intake area, and each law library.

1774 Defendants will maintain supplies of the Class Notice, the Summary Notice and the

1775 Comment Sheet and will provide copies of those materials to individual Class

**Exhibit A**

1776    Members and Significant Others upon request.  The Settlement Agreement shall also

1777    be available in each City Jail law library.  Defendants shall also ensure that copies of

1778    the Notice Materials are available in each mental health and medical clinic, punitive

1779    segregation area, intake area, law library, and SPAN Office and that social workers

1780    working with Class Members, correctional officers working in units for the treatment

1781    of the mentally ill, and SPAN Office Staff are aware of the Notice Materials and have

1782    access to copies of the Notice Materials for distribution to Class Members.

1783         179.    Defendants shall publish the Summary Notice on the date that is 50

1784    days before the Fairness Hearing in the following publications: *El Diario*,

1785    *Amsterdam News*, the *Daily News* and the *New York Law Journal*.

1786         180.    The Parties shall seek from the Court the entry of a Final Order and

1787    Judgment upon the conclusion of the Fairness Hearing, which Final Order and

1788    Judgment shall be substantially in the form attached hereto as Exhibit B.  Among

1789    other things, the Final Order and Judgment sought by the Parties shall approve the

1790    proposed Settlement set forth in this Agreement as fair, reasonable and adequate;

1791    shall award attorneys' fees and expenses to Class Counsel; and shall include a

1792    provision dismissing the Action without prejudice and withdrawing all pending

1793    motions, subject to the Court's continuing jurisdiction to interpret and enforce this

1794    Agreement and the Final Order and Judgment.

1795         181.    Defendants will pay all costs of printing, publishing, and distributing

1796    the Notice Materials to Class Members, Significant Others, and any others to whom

1797    notice must be provided in accordance with the Hearing Order.

**Exhibit A**

1798   **IX.   OBJECTIONS TO AND COMMENTS ON THE SETTLEMENT**

1799   182.   Any Class Member who wishes to object to the fairness,

1800   reasonableness or adequacy of this Agreement or the proposed Settlement described

1801   herein must submit a comment or objection no later than 25 days before the Fairness

1802   Hearing by (a) placing his or her written comment or objection in a Comment Box

1803   (located in the areas described in the Settlement Agreement) no later than 25 days

1804   before the Fairness Hearing, (b) mailing his or her written objection or comment,

1805   postmarked no later than 25 days before the Fairness Hearing, to the Managing

1806   Attorney, Debevoise & Plimpton, 919 Third Avenue, New York, New York 10022,

1807   or (c) leaving a recorded message containing his or her comment or objection and

1808   information that identifies him or her as a Class Member by calling the toll-free

1809   number designated for that purpose (which number shall be contained in the Class

1810   Notice and the Summary Notice) no later than 25 days before the Fairness Hearing.

1811   183.   In response to any written or oral comments or objections or request

1812   from a Class Member, Class Counsel may meet with any incarcerated Class Member.

1813   Defendants' Counsel may also attend such meetings, unless the Class Member objects

1814   (in which case, Defendants' Counsel shall not attend), and shall promptly arrange and

1815   facilitate such meetings before the expiration of the period allowed for submission of

1816   comments on and objections to the Settlement Agreement.

1817   184.   Defendants shall provide sealed Comment Boxes for the collection of

1818   Comment Sheets in each law library and SPAN Office.  Defendants shall, 20 days

1819   before the Fairness Hearing, or at such other time as the Court shall direct, deliver the

1820   Comment Boxes, unopened, to Debevoise & Plimpton.

**Exhibit A**

1821    185. Class Counsel and Defendants' Counsel shall jointly review the

1822 Comment Sheets prior to the Fairness Hearing.  The Parties agree that the identities of

1823 all Class Members who submit written comments or objections in connection with the

1824 proposed Settlement shall remain strictly confidential, and that any such written

1825 comments or objections filed with the Court shall be redacted so as to mask the

1826 identity of the Class Members who submitted such comments or objections, unless

1827 the Class Member consents to his or her identity being made public.

1828 **X.  ATTORNEYS' FEES AND EXPENSES**

1829    186. Defendants recognize that the Court may award attorneys' fees and

1830 expenses to Class Counsel based on the reasonable value of legal services rendered,

1831 pursuant to Article 9 of the CPLR.  Defendants agree that it would be an appropriate

1832 exercise of the Court's discretion to award such fees and expenses in this action.  The

1833 Parties agree to negotiate in good faith in an attempt to agree on the amount of

1834 reasonable attorneys' fees and expenses to be awarded to Class Counsel.  In the event

1835 the Parties are unable to reach such agreement, Plaintiffs reserve the right to make an

1836 application to the Court for an award of attorneys' fees and expenses in accordance

1837 with the CPLR and any other applicable law or Rule of Court.

1838    187. Defendants will bear all administrative expenses and costs incurred in

1839 connection with the implementation of this Settlement Agreement and the proposed

1840 Settlement described herein, including but not limited to the costs of printing,

1841 publishing and posting the Notice Materials, any costs associated with collecting and

1842 delivering the Comment Boxes, and the costs, including reasonable attorneys' fees

- 73 -

**Exhibit A**

1843   and expenses of Class Counsel, of monitoring and enforcement, as provided in §§

1844   IV.F and V of this Agreement.

1845   **XI.     TERMINATION OF THIS AGREEMENT**

1846          188.    This Agreement may be terminated at the sole option and discretion of

1847   Defendants or Plaintiffs if the Court, or any appellate court(s), rejects, modifies or

1848   denies approval of any portion of this Agreement or the proposed Settlement that the

1849   terminating Party in its (or their) sole judgment and discretion reasonably

1850   determine(s) is material.  The terminating Party must exercise this option to withdraw

1851   from and terminate this Agreement no later than 20 days after receiving notice of the

1852   event prompting the termination.

1853          189.    Notwithstanding the immediately preceding ¶ 188, neither Plaintiffs

1854   nor Defendants may terminate this Agreement solely because of the amount of

1855   attorneys' fees and expenses awarded by the Court or any appellate court(s).

1856          190.    If an option to withdraw from and terminate this Agreement arises

1857   under ¶ 188, (a) neither Defendants nor Plaintiffs will be required for any reason or

1858   under any circumstance to exercise that option, and (b) any exercise of that option

1859   shall be made in good faith.

1860          191.    If this Agreement is terminated pursuant to ¶ 188, then:

1861                          a.      this Agreement shall be null and void and shall have no
1862                                  force or effect, and no Party to this Agreement shall be
1863                                  bound by any of its terms, except for the terms of this §
1864                                  XI;

1865                          b.      this Agreement, all of its provisions, and all
1866                                  negotiations, statements and proceedings relating to it
1867                                  shall be without prejudice to the rights of Defendants,
1868                                  Plaintiffs or any other Class Member, all of whom shall

- 74 -

**Exhibit A**

| | | | |
|---|---|---|---|
| 1869 | | | be restored to their respective positions in this Action |
| 1870 | | | existing immediately before the Execution Date; |
| 1871 | | c. | all motions withdrawn pursuant to the Hearing Order or |
| 1872 | | | the Final Order and Judgment shall be immediately |
| 1873 | | | restored to the Court's calendar; |
| 1874 | | d. | neither this Agreement, nor the fact of its having been |
| 1875 | | | made, shall be admissible or entered into evidence for |
| 1876 | | | any purpose whatsoever; and |
| 1877 | | e. | any order or judgment entered after the Execution Date |
| 1878 | | | will be deemed vacated and will be without any force or |
| 1879 | | | effect. |

1880    **XII.    MODIFICATION OF THIS AGREEMENT**

1881         192.    The terms and provisions of this Agreement may be amended,

1882    modified or expanded only by written agreement signed by the Parties and approved

1883    by the Court; provided, however, that after entry of the Final Order and Judgment the

1884    Parties may by written agreement, signed by Class Counsel and Defendants' Counsel,

1885    effect such amendments, modifications or expansions of this Agreement and its

1886    implementing documents (including all exhibits) without notice to or approval by the

1887    Court if such changes are consistent with the Court's Final Order and Judgment and

1888    do not limit the rights of Class Members under the Settlement Agreement.

1889    **XIII.    TERMINATION OF PROSPECTIVE RELIEF**

1890         193.    The provisions of this Agreement shall terminate at the end of five

1891    years after monitoring by the Compliance Monitors begins pursuant to § IV of this

1892    Agreement.  Plaintiffs may apply to the Court by motion on notice for a finding that

1893    Defendants have not complied with the terms of this Settlement Agreement over the

1894    preceding two years, and, if such finding is made by the Court, for an Order

1895    continuing the provisions of this Agreement for an additional two-year interval or

1003086436v1

**Exhibit A**

1896   intervals to the extent necessary to correct any current and ongoing violation of this

1897   Settlement Agreement.

1898        194.    At the end of each such additional two-year interval, Plaintiffs may

1899   apply to the Court by motion on notice for a finding that Defendants have not

1900   complied with the terms of the Settlement Agreement over the preceding two years,

1901   and, if such finding is made by the Court, for an Order continuing the provisions of

1902   the Settlement Agreement to the extent necessary to correct any current and ongoing

1903   violation of this Settlement Agreement.

1904   **XIV.   GENERAL MATTERS AND RESERVATIONS**

1905        195.    Thomas C. Crane represents that he is authorized to enter into this

1906   Agreement on behalf of all Defendants and any attorneys who have represented or

1907   who now represent Defendants in the Action.

1908        196.    Whenever this Agreement requires or contemplates that one Party

1909   shall or may give notice to the other, notice shall be provided by fax and/or next-day

1910   (excluding Sunday) express delivery service and/or same-day hand delivery as

1911   follows:

       If to Class Counsel:               Christopher K. Tahbaz, Esq.
                                            Debevoise & Plimpton
                                            919 Third Avenue
                                            New York, New York  10022
                                            fax:  212 909-6836

                                            and to

                                            Jennifer Parish, Esq.
                                            Urban Justice Center
                                            40 Rector Street, 9th Floor
                                            New York, New York  10006
                                            fax: 212 533-4598

1003086436v1

# Exhibit A

and to

Roberta Mueller, Esq.
New York Lawyers for the Public
Interest, Inc.
151 West 30th Street, 11th Floor
New York, New York  10001
fax:  212 244-4570

If to Defendants' Counsel:        Thomas C. Crane, Esq.
The New York City Law Department and
Corporation Counsel
100 Church Street
New York, New York  10007
fax:  212 356-8760

1912
1913        197.    The Parties expressly acknowledge that no other agreements,

1914   arrangements or understandings not expressed in this Agreement or the exhibits

1915   hereto exist among or between them and that this Agreement and the exhibits hereto

1916   contain all the terms and conditions agreed upon by the Parties.

1917        198.    All time periods in this Agreement expressed in terms of days are to be

1918   measured in calendar days (without excluding weekend days or holidays), unless

1919   otherwise specifically noted.

1920        199.    This Agreement and any ancillary agreements shall be governed by

1921   and interpreted according to the law of the State of New York, excluding its conflict

1922   of laws provisions.

1923        200.    The Court shall maintain continuing jurisdiction over this proceeding

1924   for the term of this Agreement, and any disputes concerning this Agreement shall be

1925   resolved by the Court upon motion of either party, or upon such notice as the Court

1926   may direct.

- 77 -

1003086436v1

**Exhibit A**

1927        201.    The Parties reserve the right, subject to the Court's approval, to make

1928    any reasonable extensions of time that may be necessary to carry out any of the

1929    provisions of this Agreement.

1930        202.    This Agreement, any action taken to carry out this Agreement, any

1931    negotiations or proceedings related to this Agreement, and the carrying out and

1932    entering into the terms of the Settlement Agreement shall not be construed as, or

1933    deemed to be evidence of, an admission or concession with regard to any fault,

1934    wrongdoing, or liability whatsoever.

1935        203.    The Parties agree that this Agreement was drafted by counsel for the

1936    Parties at arm's length, and that no parol or other evidence may be offered to explain,

1937    construe, contradict or clarify its terms, the intent of the Parties or their counsel, or

1938    the circumstances under which the Agreement was made or executed.

1939        204.    The Parties, their successors and assigns, and their attorneys undertake

1940    to implement the terms of this Agreement in good faith, and to use good faith in

1941    resolving any disputes that may arise in the implementation of the terms of this

1942    Agreement.

1943        205.    The Parties, their successors and assigns, and their attorneys agree to

1944    cooperate fully with one another in seeking Court approval of this Agreement and to

1945    use their best efforts to effect the prompt consummation of this Agreement and the

1946    proposed Settlement.

1947

1003086436v1

# Exhibit A

1948
1949        206.   This Agreement may be signed in counterparts, each of which shall

1950   constitute a duplicate original.

1951   Dated: New York, New York
1952         January 8, 2003

DEBEVOISE & PLIMPTON

By:_____
     Christopher K. Tahbaz
     Patricia G. Corley
     Emily O'Neill Slater
919 Third Avenue
New York, New York 10022
(212) 909-6000

DOUGLAS LASDON
RAYMOND H. BRESCIA
HEATHER BARR

By:_____
     Heather Barr
Urban Justice Center
666 Broadway, 10th Floor
New York, New York 10012
(646) 602-5671

NEW YORK LAWYERS FOR THE
PUBLIC INTEREST, INC.

By:_____
     John A. Gresham
30 West 21st Street, 9th Floor
New York, New York 10010
(212) 244-4664

Counsel for the Plaintiffs and the Class

MICHAEL A. CARDOZO
  CORPORATION COUNSEL OF
  THE CITY OF NEW YORK

By:_____
     Thomas C. Crane
     Jeffrey S. Dantowitz
100 Church Street
New York, New York 10007
(212) 788-0303

Counsel for Defendants

1003086436v1

**Exhibit A**

## Addendum A

**Criteria for Serious Mental Illness**

Serious Mental Illness ("SMI") as referenced in the Stipulation shall mean a diagnosis-based categorization consisting of the following disorders as described in the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition ("DSM-5"):

- Schizophrenia Spectrum and Other Psychotic Disorders; Bipolar and Related Disorders; Depressive Disorders; and PTSD.

Any of the foregoing diagnoses resulting from a substance use or a medical condition are excluded.  Individuals who do not meet the preceding diagnostic criteria, but experience significant functional impairment or clinical distress as a result of a DSM-5 diagnosis, shall be designated with SMI, but such designation may be removed with the approval of a Clinical Supervisor or Supervising Psychiatrist by documenting that the designation is not clinically appropriate in the context of an individual Class Member.